ANNA M. BEECHER, as Sole Executrix of CHARLES L. C. BEECHER, Deceased, Respondent, *v*. THE LONG ISLAND RAILROAD COMPANY, Appellant.

CONTRIBUTORY NEGLIGENCE — QUESTION OF FACT.   Where in an action to recover damages for alleged negligence causing the death of a railroad passenger, the jury are at liberty to find from the evidence before it that the defendant had started the train on the south track substantially every morning for many years, and that during all that period of time, upon the announcement by the doorman of "The Rapid Transit for Brooklyn," the people were accustomed to rush out of the station, over the station platform to the north tracks, then across them to and upon the platform, in readiness to board the train as soon as it came to a stop; and that this custom had been so long continued that such an announcement by the doorman on the morning of the accident constituted an invitation to every passenger there, including the plaintiff's testator, to pass out of the station, across the station platform, then over the north tracks and to the platform of the south track, with the assurance that the way was not only free from obstructions, but would remain so for such a reasonable time as would enable them to pass to the train in safety; the question whether or not the deceased was guilty of contributory negligence in failing to look or listen as the train approached which caused his death, is one of fact and should be submitted to the jury.

*Beecher* v. *L. I. R. R. Co.*, 35 App. Div. 292, affirmed.

(Argued December 11, 1899; decided January 9, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered in December, 1898, reversing a judgment in favor of defendant entered upon a dismissal of the complaint at a Trial Term, and granting a new trial.

This action was brought to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of defendant.

At Jamaica the defendant's tracks, four in number, run substantially east and west; a high fence separates the two southerly or east-bound tracks from the northerly or west-bound tracks; on the northerly side of all the tracks is a station.   There was evidence tending to show that for many years it had been the custom of the Long Island City trains to take the north track, which is the one next to the station, and is called the main west-bound track; while passengers from Brooklyn took trains on the south west-bound track, and in doing so had to pass over the platform between the station and the north-bound track, thence across the north-bound track to the platform, which had been erected between the two tracks for the accommodation of passengers, and thence across the platform to the cars.   For some months prior to the twenty-sixth day of January, 1897, the plaintiff's testator had resided at Jamaica, and was a commuter on the defendant's road, using the train locally termed "the rapid transit for Brooklyn," which left on the south west-bound track for Brooklyn every morning at six o'clock.   There was evidence tending to show that there had been a few occasions on which the train had left Jamaica on the north track, but it had been the custom for a number of years for it to leave on the south track, and if there were any occasions when it did not, they constituted, as is conceded, simply exceptions to the rule.   At this hour of the day there was but a very short interval of time between trains on these tracks.   The train in question was due to leave the station at six-four; the Hempstead train at five-fifty-five, and the Rockaway train was due to start between those two periods.   The Hempstead train usually went on the south track, and the Rockaway train on the north track, and was almost immediately followed by the rapid transit for Brooklyn on the south track, but in some way, the flagman says, the Rockaway, instead of being the second train to start, was the first, and the Hempstead train being the

second, it went on the south track, and but shortly before the rapid transit for Brooklyn was due.

On the morning of the day in question the weather was cold and the passengers were within the station building, when the doorman opened the door leading to the station and called out "rapid transit for Brooklyn," and the passengers rushed out, the plaintiff's testator preceding them all, and when about half way across the north track he was struck by the locomotive of the incoming train and instantly killed — killed by the train that it was the intention of the passengers to board as usual on the south track, but which by some mistake of the switchman, or if not by his mistake, then certainly without warning of the change to the passengers, was sent into the station on the north track. That there was evidence to go to the jury upon the question of the defendant's negligence has not been seriously questioned and need not be considered, but the learned trial court was of the opinion that plaintiff's testator was chargeable with contributory negligence as matter of law, and dismissed the complaint. It is undoubtedly established that had Beecher looked in the direction of the incoming train, he would have seen it approaching. Others who were close behind him saw it in time to avoid being run over, although they differed in their description of what it was that first arrested their attention. As, for instance, one of the would-be passengers and a witness saw the headlight burning on the engine, while another did not see it at all. One of the persons who was following close behind the plaintiff's testator, as he saw the engine was coming in on the north track, shouted a warning to the deceased a moment before the accident and vainly attempted and at considerable risk to himself to catch hold of him.

*William J. Kelly* for appellant. The plaintiff failed to show that deceased was free from negligence. On the contrary, the evidence affirmatively showed his contributory negligence. (*Riester* v. *N. Y. C. & H. R. R. R. Co.*, 16 App. Div. 216; *Doyle* v. *A. Ry.*, 5 App. Div. 601; *Gonzales* v. *N.*

*Y. & H. R. R. Co.*, 38 N. Y. 440 ; *Wheelright* v. *B. & A. R. R. Co.*, 135 Mass. 225 ; *Dobiecki* v. *Sharp,* 88 N. Y. 203 ; *Becht* v. *Corbin,* 92 N. Y. 658.)

*Augustus N. Weller* for respondent. The sole question here is, can the court say, as a matter of law, that the plaintiff was guilty of contributory negligence ? Under the circumstances, the question of plaintiff's contributory negligence was one of fact for the jury to determine, and not for the court. (*Terry* v. *Jewett,* 78 N. Y. 338 ; *Warfield* v. *N. Y., L. E. & W. R. R. Co.*, 8 App. Div. 479 ; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 241 ; *Lent* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 467 ; *Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128 ; *Jewell* v. *N. Y. C. & H. R. R. R. Co.*, 27 App. Div. 500 ; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 652 ; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 355.)

PARKER, Ch. J. The plaintiff's testator having neither looked nor listened as the train approached which caused his death, the query is whether the court must say that his negligence contributed to the result, or the jury may say that it did not.

The jury were at liberty to find from the evidence before it that the defendant had started the train on the south track substantially every morning for many years, and that during all that period of time, upon the announcement by the doorman of "the rapid transit for Brooklyn," the people were accustomed to rush out of the station, over the station platform to the north tracks, then across them to and upon the platform, in readiness to board the train as soon as it came to a stop ; and that this custom had been so long continued that such an announcement by the doorman on the morning in question, constituted an invitation to every passenger there, including the plaintiff's testator, to pass out of the station, across the station platform, then over the north tracks and to the platform of the south track, with the assurance that the way was not only free from

obstructions, but would remain so for such a reasonable time as would enable them to pass to the train in safety, and, therefore, it was for the jury to say whether in accepting that invitation and proceeding as plaintiff's testator did, without looking and listening, and in the manner described by the witnesses, he was nevertheless exercising that reasonable care and caution which the situation demanded. Cases in which the principle is invoked which lies at the foundation of this decision, are *Terry* v. *Jewett* (78 N. Y. 338); *Brassell* v. *N. Y. C. & H. R. R. R. Co.* (84 N. Y. 241); *Palmer* v. *N. Y. C. & H. R. R. R. Co.* (112 N. Y. 234); *Oldenburg* v. *N. Y. C. & H. R. R. R. Co.* (124 N. Y. 414).

The order of the Appellate Division should be affirmed.

All concur, except GRAY, J., not voting.

Order affirmed, and judgment absolute ordered for the plaintiff on the stipulation, with costs.