RUTH CRANCH, Respondent, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

CONTRIBUTORY NEGLIGENCE. The facts examined in an action to recover damages for injuries sustained by the plaintiff while attempting to cross the railroad track of defendant, and *held* that they not only failed to establish her freedom from contributory negligence, but demonstrated its existence as a matter of law.

*Cranch* v. *Brooklyn Heights R. R. Co.*, 107 App. Div. 341, reversed.

(Argued October 17, 1906; decided November 13, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered September 6, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages for injuries sustained by the plaintiff in a collision with one of defendant's trains at what is known as the 84th street station of that branch of its railroad which runs southerly from the city of Brooklyn to Ulmer Park. The 84th street station is in the Bath Beach section of the city of Brooklyn. The accident happened shortly before 11 o'clock on the morning of November 22, 1901. The plaintiff, a married woman, was on that date about 41 years of age, and, with her husband, had resided within a few blocks of the station mentioned for a number of years, so that she was familiar with the locality and with the times of the running of trains on defendant's road.

At 84th street the railroad consists of double tracks running generally north and south. The trains are propelled from an overhead trolley system. At that point the right of way is a private one derived from a steam railroad which had formerly been operated there. On each side of the tracks to the south of 84th street, which crosses the tracks from east to west, are concrete platforms 120 feet in length that serve as stations for persons intending to take passage on defendant's trains. The north-bound trains run to Brooklyn and pass in front of the easterly platform, while the south-bound trains going to Ulmer Park pass in front of the westerly platform.

At about 20 minutes to 11 on the morning of the accident the plaintiff, in company with her husband, left her home intending to take a train to Brooklyn which was scheduled to leave 84th street at 10:53. They approached the tracks from the west by a diagonal foot path across a vacant lot. When they had crossed this vacant lot and had reached 18th avenue, which is adjacent to the defendant's right of way on the west, they saw a train approaching from the south and then about 700 or 800 feet distant. They supposed that it was the 10:53

train to Brooklyn which they intended to take. Continuing towards the tracks and expecting to cross them to the opposite platform ahead of the approaching train their progress was interrupted by a train from Brooklyn which came in on the south-bound track in front of them, crossed 84th street and stopped at the platform on the westerly side. The rear end of the last car of this south-bound train stopped at about the northerly end of the platform on the westerly side, which is about 6 feet south of the 84th street crossing. As they crossed behind the rear car of this train and emerged from behind it into the space between the two tracks, the plaintiff looked to the south and saw the on-coming north-bound train at the southerly end of the concrete platform about 120 feet away. Her husband crossed safely at this point and reached the northerly end of the platform on the opposite side, which is nearer to 84th street than the one on the westerly side. The plaintiff did not attempt to follow her husband across at this point. Having seen the train approaching at the other end of the platform, and evidently supposing that it would stop by the time the first car reached the northerly end of the platform, she turned and walked towards the north about 35 feet, taking the same direction as the approaching train. This took her well into the center of 84th street. She then attempted to cross without again looking at the approaching train. Just as she placed one foot on the track she was struck by the motor car of the north-bound train, which had not slackened its speed, and sustained the injuries complained of.

The plaintiff and her husband acted upon the assumption that this train was the one due to leave for Brooklyn at 10 : 53, and that it would stop as usual in front of the 84th street platform in such a position that the first car would not pass beyond the northerly end of the platform. It transpired, however, that it was not a regular train, and was not scheduled to stop at that station. The place at which the plaintiff attempted to cross was shown, by the plaintiff's evidence, to be considerably to the north of the usual stopping place of trains at this station.

The plaintiff's evidence tended to show, and the jury were justified in finding, that all trains, except those running at night after 9 or 10 o'clock and in the early morning, came to a stop at this station, and that the front end of the first car of such stopping trains did not usually project more than a few feet beyond the end of the platform towards the 84th street crossing.

The evidence also justified the jury in finding that in approaching this station those in charge of the train that caused the accident blew no whistle, rang no bell or gave any warning of its approach, and that the speed of the train, which was about 12 miles an hour, was not slackened. In short, that nothing was done to indicate that this was not the regular train scheduled to stop at the 84th street station at that time.

*I. R. Oeland* and *George D. Yeomans* for appellant. Plaintiff failed to show her freedom from contributory negligence, and the action should have been dismissed. (*White* v. *N. Y. C. R. R. Co.*, 68 App. Div. 564; *Salter* v. *U. & B. R. R. R. Co.*, 75 N. Y. 281; *Lofsten* v. *B. H. R. R. Co.*, 184 N. Y. 148; *Knapp* v. *M. S. Ry. Co.*, 103 App. Div. 252; *Keller* v. *E. R. R. Co.*, 98 App. Div. 552; *Ryan* v. *N. Y. C. & H. R. R. R. Co.*, 30 App. Div. 154; *Madden* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 665; *Davenport* v. *B. C. R. R. Co.*, 100 N. Y. 632; *Freeman* v. *B. H. R. R. Co.*, 82 App. Div. 522; *Johnson* v. *T. A. R. R. Co.*, 69 App. Div. 250.)

*Stephen C. Baldwin* for respondent. Whether plaintiff was guilty of negligence contributing to the injury was a question of fact for the jury. (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224.)

WERNER, J. For the purposes of this discussion we will assume that the jury had the right to charge the defendant with negligence, for there was evidence tending to show that

those in charge of the train with which the plaintiff collided gave no signal or warning of its approach to the crossing at which the accident happened. We must also assume that the evidence warranted the finding that all of the north-bound trains of the defendant stopped at the 84th street station, and that this fact was known to the plaintiff, who had been a resident in that vicinity for many years, and had been a frequent passenger on the defendant's railroad. If these facts, in and of themselves, justified the plaintiff's attempt to cross the tracks at the time and in the manner above indicated, it would logically follow that the verdict of the jury was proper and that its affirmance by the Appellate Division was necessary. It seems to us, however, that the plaintiff's evidence upon this feature of the case not only failed to establish her freedom from contributory negligence, but demonstrated its existence as matter of law. The evidence which tended to show that all of the defendant's north-bound trains stopped at the 84th street station was clearly competent and cogent upon that question, and, standing alone, might have been sufficient to sustain the conclusion that the plaintiff was free from contributory negligence. But there is something more. The plaintiff testified that from the time when she and her husband reached 18th avenue and first saw the north-bound train at a distance of 700 or 800 feet south of the station; she did not see it again until she looked around the rear end of the south-bound train which had stopped at the station. At that moment she saw the north-bound train coming into the southerly end of the station at a distance of at least 120 feet south of the point from which she took her observation. Instead of attempting to cross then and there, as she might possibly have done in safety, she concluded to walk to the north for a distance of 35 or 40 feet, to a place at or near the center of 84th street. What was her purpose in doing this? She was doubtless acting upon the assumption that the train would stop at the station, and, therefore, concluded to go far enough to the north to be entirely clear of the motor car of the train which, in stopping, might run slightly past the limits

of the station and into the boundaries of 84th street. Having taken this precaution, while she was in a place of absolute safety from which she could at every instant have commanded a full view of the approaching train, it is obvious that she should not have attempted to cross the track without first looking to see whether the train had in fact stopped. It is a familiar physical fact within the knowledge of all persons of ordinary intelligence that railroad trains, operated either by steam or electricity, cannot always be stopped with mathematical precision at a given point. This fact is clearly demonstrated by the evidence which tends to show that the north-bound trains, in stopping at the 84th street station, would sometimes be brought to a standstill before the motor car reached 84th street, and on other occasions would run a little further to the north so as to project into 84th street.

The inevitable inference to be drawn from the plaintiff's own testimony is that it was this uncertainty as to the precise point of stoppage of the train that was in her mind when she concluded to make the "detour" of 35 or 40 feet to the north. In doing so she turned her back to the on-coming train and never looked again to see where it was, or whether it had stopped or not, although a simple turn of her head would have sufficed to gain for her this all-important information. Without a look, she put her foot upon the north-bound track. Before she could move forward, she was struck by the train which was then moving at the rate of 12 miles an hour. Without any attempt to exercise her senses of sight or hearing she stepped from the zone of absolute safety into a place of probable danger, and this at the very time when the exercise of her faculties was imperative, if her previous precautions were to be of any practical benefit. If such conduct does not properly support the legal inference of contributory negligence, then there can be no case in which the speculative finding of a jury upon that question may not be substituted for legal rules of evidence.

It may be admitted, for the argument, that the custom of stopping all north-bound trains at this station and the failure

of the defendant to give any signal or warning of its intention not to stop this particular train, might have lulled the plaintiff into a feeling of security such as described in the case of *Parsons* v. *N. Y. C. & H. R. R. R. Co.* (113 N. Y. 355, 363). The obvious answer to that suggestion is that the plaintiff's own conduct, considered in the light of the surrounding circumstances, was utterly inconsistent with that theory. When the plaintiff and her husband reached the northerly end of the stationary south-bound train the husband crossed the intervening track and, according to the undisputed testimony barely escaped collision with the on-coming train. Had the plaintiff attempted to follow even a moment later, an accident would have been inevitable. It was this emergency that must have suggested to the plaintiff the propriety of going to the north to a point beyond which the then moving train would be sure not to extend if it were going to stop at that station. Having done so much, how could the plaintiff be said to have exercised reasonable care and caution without even taking another look before stepping from her position of safety literally against the motor car which was then directly in front of her.

We do not deem it necessary to go into an extended discussion of the decided cases for, in the last analysis, the question of contributory negligence depends upon the application of well-settled legal rules to the special facts of each given case. As a general rule the question whether a person colliding with a railroad train has been guilty of contributory negligence is one of fact for a jury (*Parsons* v. *N. Y. C. & H. R. R. R. Co.*, *supra*), and, as applied to the specific facts of this case, that rule is to be considered in the light of another rule to the effect that a person who intends to take passage upon a railroad train and crosses the railroad tracks at a highway crossing commonly used for that purpose, is not held to the same strict exercise of care and caution that is required of the ordinary wayfarer along the highway. (*Terry* v. *Jewett*, 78 N. Y. 338; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 241.) Both of these rules might be successfully invoked in

support of plaintiff's contention that her alleged contributory negligence presented a question of fact for the jury, if it were not for the conclusive character of the evidence showing that plaintiff, although fully cognizant of the threatened danger, disregarded the most simple and obvious precautions for her safety that common prudence and ordinary intelligence could suggest.  Having gone out of her way to avoid the train, she neglected to look for it at a time when every instinct of self-preservation and every dictate of common prudence demanded such action.  Instead of attempting to cross at the usual place, relying upon the customary stoppage of the train, she had witnessed the dangerous, albeit successful, experiment of her husband, and concluded to defer her crossing to another time and place.  Assuming that the plaintiff walked at the rate of four miles an hour, it would have taken her between 5 and 6 seconds to make her "detour" of 35 feet, while it would have taken the train, running at the rate of 12 miles an hour, between 8 and 9 seconds to reach the place where she attempted to cross; that point being 155 feet north of the southerly entrance to the station.  Thus, although this was a matter of seconds, the plaintiff still had an appreciable period of time in which to look for the train, after she had arrived at the place where she attempted to cross and before that point had been reached by the train.  These are the facts which differentiate this case from *Palmer* v. *N. Y. C. & H. R. R. R. Co.* (112 N. Y. 234); *Beecher* v. *Long Island R. R. Co.* (161 id. 222), and the other cases relied upon by the plaintiff.  In all of those cases there were circumstances from which it was reasonable to draw the inference, either that such care had been exercised as was required in the circumstances, or that the necessity for such care had been obviated by conditions well calculated to lull a reasonably prudent person into a sense of security.  In the case at bar the plaintiff's own testimony affirmatively establishes, not only her failure to exercise necessary care, but her evident understanding and appreciation of the conditions which attended her attempt to cross the tracks.

The judgment should be reversed and a new trial granted, with costs to abide the event.

VANN, J. (dissenting). I dissent. The plaintiff, instead of running the risk her husband ran, took greater care than he, and relying, as she had the right to, on the absence of signals and the uniform custom of the defendant, met with injury owing to its negligence. The strict rule governing travelers at a highway crossing does not apply to one who is compelled to cross tracks in order to reach a railway station, which, when a train is due, is a constant invitation to come and take it. It was the duty of the defendant to so arrange its trains that a person intending to take passage could get on one without being injured by another. The plaintiff had the right to assume, in the absence of any warning, that the north-bound train would stop where such trains always had stopped. She may have erred in judgment in believing that the defendant would do its duty and warn her if a train passed by without stopping, but since she took care to walk far around instead of following her husband straight across, she should not be turned out of court on the ground that she took no care whatever. While she did not take all the care possible, since she took some, it was for the jury to say whether she took enough, and we should not hold that she was negligent as matter of law. Strict rules are required to protect passengers and those about to enter a station intending to become passengers, and every decision which tends to undermine their safety is a misfortune to the traveling public. I vote to affirm.

CULLEN, Ch. J., HAIGHT and HISCOCK, JJ., concur with WERNER, J.; WILLARD BARTLETT, J., concurs with VANN, J.; GRAY, J., absent.

Judgment reversed, etc.