### DOLAN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. May 5, 1911.)

RAILROADS (§ 327*)—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

 Plaintiff approached a double-track railroad crossing, driving a team, which was struck by a train. From the building line to the north rail of the west-bound track was 65 feet. A person approaching the crossing from the north had a practically unobstructed view of the tracks to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the west as soon as he was in line with the fronts of the buildings on the north side of the avenue. One of plaintiff's witnesses testified that he saw plaintiff when the heads of his horses were flush with the curb line, and at this time the engine was 200 feet west of the avenue. Another witness testified that, just before plaintiff reached the east-bound track, he looked to the right and left, and that the train was then 125 feet from the crossing. Plaintiff was familiar with the crossing. He testified that he looked both ways and saw no train, but did not look again until he drove on the west-bound track, when a flagman seized the horses, brought them to a standstill for a few seconds, and then plaintiff whipped up the horses and attempted to cross, and was struck and injured. *Held*, that plaintiff was negligent as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

Action by Michael F. Dolan against the Long Island Railroad Company. A verdict was directed for defendant, and plaintiff's motion for a new trial on exceptions was ordered to be heard in the first instance at the Appellate Division. Exceptions overruled, and motion denied.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and WOODWARD, JJ.

Rufus O. Catlin (James C. Cropsey, on the brief), for plaintiff.
William C. Beecher, for defendant.

RICH, J. The defendant has two tracks laid through the center of Atlantic avenue, in the borough of Brooklyn, one used for east and the other for west bound traffic, over which it operated its trains. At about 3 o'clock in the afternoon of December 23, 1902, plaintiff drove a team of horses, attached to a wagon in which he was riding, down Pennsylvania avenue, approaching Atlantic avenue from the north. One of defendant's west-bound trains·was approaching the crossing at Pennsylvania avenue at a high rate of speed. There was a flagman stationed at this crossing, but he was in his shanty. As the plaintiff drove upon the west-bound track, the flagman rushed out of the shanty, took the horses by the bits, and his efforts brought the horses to a standstill for a few seconds, when the train collided with the rig, resulting in the injury to plaintiff and his property, for which he seeks to recover in this action. When plaintiff rested his case, the defendant moved to dismiss the complaint, upon the grounds that negligence on the part of defendant had not been proven, and that the evidence established plaintiff's contributory negligence as matter of law. The motion was granted, and plaintiff's exceptions ordered heard in the first instance here.

To intelligently determine the presence or absence of plaintiff's negligence in attempting to drive over this crossing in front of the approaching train, it will be necessary to consider somewhat fully surrounding conditions as shown by the evidence he adduced on the trial. The buildings on the north side of, and fronting on, Atlantic avenue, between Pennsylvania and Sheffield avenues, the first street to the west, are uniformly about 20 feet from the curb. From the north curb to the north rail of the east-bound track is 32 feet and 1 inch. The dis-

tance between the rails of that track is 5 feet. The distance from the south rail of the east-bound track to the north rail of the west-bound track is approximately 8 feet. A person approaching the crossing from the north has a clear and practically unobstructed view of the tracks of defendant's road to the west, as soon as he is in line with the fronts of the buildings on the north side of Atlantic avenue, 20 feet north of the curb. This view continues for 65 feet before the north rail of the west-bound track is reached.

One of the plaintiff's witnesses testifies that when he first saw the plaintiff the heads of his horses were flush with the curb line, which is 45 feet from the north rail of the west-bound track, on which the collision occurred. At that time, the witness says, the engine of the approaching train was east of Sheffield avenue, which is 200 feet west of Pennsylvania avenue. Another witness says that, just before the plaintiff reached the first or east-bound track, he looked to the right and left, and that the train was then about 125 feet from the crossing. The preponderance of the evidence is that plaintiff approached the crossing with his horses on a slow trot, and did not increase or decrease their speed until he had reached or was close to the west-bound tracks, when he increased their speed to cross ahead of the approaching train.

The plaintiff testifies that he was familiar with the crossing, which he repeatedly and frequently crossed in going to and from his house; that he knew that the gates that had formerly been maintained at the crossing had been removed while work was being done at that point; that it was a clear day; that as he approached Atlantic avenue his horses were on a slow trot, which he reduced to a walk on reaching the avenue, and as he reached it he looked both to the right and left, to see if any train was coming, and that he could not see any. He continues:

"After I had got about halfway from the curb and tracks, I did not look again to the right and left. After my horses got to the first tracks, I looked to the right and left. * * * When my horses got over on the other track, on which the train was coming, I did not look again. I drove up then until the flagman came out."

He admits that he saw the train when his horses were on the first track, the south rail of which was 8 feet from the track on which the collision occurred, and says the train was then a block away, and that he then whipped up his horses and attempted to cross in front of it. No explanation is given why the plaintiff, if he looked to the west, as he says he did, when he reached Atlantic avenue, did not see the approaching train, which his witness says was less than 200 feet away when he drove into Atlantic avenue. Upon his own evidence, he did see it when he was at least 8 feet from the north rail of the track on which it was approaching, and he had ample time and opportunity, in the exercise of any degree of care, to have avoided the collision.

There is evidence in the case that, if the flagman had not touched the team, the collision would not have occurred; that after he drove on the west-bound track it was impossible to avoid it. Within the authorities of Wahler v. Long Island Railroad Company, 137 App. Div. 17, 121 N. Y. Supp. 755 and Cranch v. Brooklyn Heights R. R. Co., 186 N. Y. 310, 78 N. E. 1078, the facts not only fail to establish plain-

tiff's freedom from contributory negligence, but demonstrates its existence as matter of law.

Plaintiff's exceptions overruled, motion for a new trial denied, with costs, and judgment ordered for the defendant on the nonsuit. All concur.