[No. 10543. Department Two. January 22, 1913.]

ADA BELLE ARMSTRONG, *Appellant*, v. SPOKANE & INLAND
EMPIRE RAILWAY COMPANY, *Respondent*.[1]

STREET RAILWAYS—INJURY TO PERSONS ON TRACK—CONTRIBUTORY
NEGLIGENCE—EVIDENCE—QUESTION OF LAW. A pedestrian, standing
so close to a track while waiting for a street car, that she was
struck by a car coming from the opposite direction, is guilty of
contributory negligence, as a matter of law, where it appears that
the street was being graded, that she knew the company was using
but one track where the work was not completed, that she was told
that her car was waiting at a switch for another to come down, and
that the night was dark and the street unlighted, and with no traffic
or noise on the street, she paid no heed to the approaching car.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—MATERIALITY. It is
not error to refuse plaintiff a new trial for newly discovered evi-
dence as to defendant's negligence, when the case was properly dis-
missed because of plaintiff's contributory negligence.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered March 18, 1912, upon
sustaining a challenge to the sufficiency of plaintiff's evi-
dence, dismissing an action for personal injuries sustained
by a pedestrian struck by a street car. Affirmed.

*Morrill, Chester & Skuse*, for appellant.

*Graves, Kizer & Graves*, for respondent.

MORRIS, J.—Appellant began this action to recover for
injuries claimed to have been sustained through the negli-
gence of the respondent. Upon the trial, the appellant hav-
ing put in her evidence, the court, upon motion of respond-
ent, sustained a challenge to the sufficiency of the evidence,
and deciding as a matter of law that verdict should be in
respondent's favor, discharged the jury and dismissed the
action.

The appeal urges error in this ruling. The record does
not disclose the reasons for the court's ruling, as it contains

[1]Reported in 129 Pac. 379.

neither the argument of respective counsel upon the motion nor any comment made by the court, but is confined in this particular to the formal entry of judgment with recitals as above indicated. We assume, however, from the briefs that the point considered was contributory negligence, and our discussion will be confined to that question.

The appellant, who resides at Spokane, had spent part of the evening of September 23, 1912, at the home of a friend, Mrs. McCauley. At about 7:30, the two ladies started down town, and walked a block to the corner of Washington street and Augusta avenue to take a south-bound car on Washington. The night is described as quite dark. There were no street lights on Washington within two blocks of this corner, and shade trees obscured the light one block east on Augusta. Washington street was being paved at this point. The west half of the street was evidently finished, while the east half had only the loose foundation rock laid thereon. Red lights were displayed as a warning of the unfinished condition of the street.

Prior to the street being torn up for paving, respondent maintained two tracks, the east track for north-bound and the west track for south-bound cars; but while the paving was being laid, it had been the custom to run cars in both directions on one side of the street while the other was being paved, and to alternate between the east and west tracks according to the condition of the street, the cars always running on the side of the street on which the paving had been completed, and having frequent cross-over switches to enable them to do so. Appellant knew of this custom, as she was a frequent passenger on this line, although for a week prior to the accident she had been using the Division street line to take her down town, and did not know the situation in this particular at this corner.

Appellant and Mrs. McCauley reaching Washington street, crossed over to the west side, looking up and down the street for approaching cars. They saw one turning east

into Sinto avenue, three blocks south, and another at Indiana avenue, two blocks north.    Sinto avenue is the crest of a hill, and from that point to Indiana avenue is a down grade.    As appellant saw the car at Indiana avenue, she spoke to Mrs. McCauley, saying, "There is a car coming;" to which Mrs. McCauley replied, "That car is waiting at the switch for another to come down."    Reaching the west side of the street, appellant took a position alongside and apparently quite near the car track, and standing facing north, centered attention upon the car at Indiana avenue, Mrs. McCauley standing behind her.    She says she heard no bell or other warning of an approaching car.    During the short time they so stood, nothing was said until appellant heard Mrs. McCauley call her name, and turning to the south, was immediately struck in the face by a north-bound car and knocked to the ground.

Mrs. McCauley testifies that they stood there a short time, perhaps three or four minutes, when she heard a car bell, and looking around to the south, saw a car coming north, apparently between Sinto and Maxwell avenues, which would be between the second and third blocks to the south; that the car was running fast, and she watched it as it came down, and as it approached her she stepped back and looked around at appellant, who just then threw up her hand and said, "Pshaw."    Fearing the car was about to strike appellant, she "made a grab for her, and called her name to draw her attention to the fact the car was coming," but before she could reach appellant, the car struck her.    This is, we think, all the testimony in the case that is material upon the question of contributory negligence.

It is apparent that appellant, with her attention riveted upon the car at Indiana avenue, and impatiently awaiting its arrival, was wholly oblivious of her surroundings.    The fact that the Indiana avenue car was not approaching, coupled with Mrs. McCauley's remark that it was waiting at the switch for another car to come down, the red signal

lights indicating an uncompleted condition of the street at that point, her knowledge of what that uncompleted condition meant, and that while it existed, both north and southbound cars ran on one track, and that track the one on the finished side of the street, the dark night, with its lack of light—all these facts would, it seems to us, indicate to any person of ordinary prudence that some attention must be taken of them as indicating an unusual situation that required at least ordinary care; and that, under such circumstances, it was not ordinary care, nor the act of a woman of ordinary prudence, to stand upon or so close to a street car track as to be struck by a passing car. Her remark to Mrs. McCauley just before she was struck, and her gesture when she threw up her hand and said "Pshaw", indicated her impatience at the delay of the car at Indiana avenue. What was the cause of the delay? Mrs. McCauley had told her in response to her suggestion of a coming car when they first observed it. She had been told that the car was on the switch waiting for another car to come down from the south. With two tracks there would be no necessity for such a wait, but with one there was, and she knew why, although she says she did not know it that night, meaning, we take it, that it did not occur to her or that she forgot it. She was on the completed side of the street, and, although she had not been on this line for a week, her previous experience as a passenger had taught her that the track on the completed side of the street was the one used by cars going in both directions.

She says she heard no car approaching, nor any indication of its approach; but how can we escape the conclusion that, if she did not, it was only because she was oblivious of everything except the Indiana car and her strong desire for its coming? Mrs. McCauley, standing just behind her, heard a bell, and turning, saw the car that struck her between two and three blocks away, and watched it as it came down the grade. We know, therefore, that there was a signal

of danger sufficient to engage Mrs. McCauley's attention and enable her to take a position of safety. True, Mrs. McCauley says she does not know whether it was a bell on this car that she heard or not. Whatever it was or wherever it was, it served the purpose of conveying information to her that a car was approaching.

Had appellant been as alert as Mrs. McCauley, it would have served the same purpose to her and prevented her injury. What was the difference in the attitude of these two women? It seems to us the answer is, the difference between a woman of ordinary prudence, exercising ordinary care for her safety and thus enabled to prevent injury, and one who overlooks every present fact calculated to draw her attention to her surroundings, and impelled by her impatient desire for the quick approach of her car, forgets everything but that desire. She says she heard no warning bell. We will overlook the testimony of Mrs. McCauley, and using only the facts that cannot be disputed, we know that a heavy modern street car, running at fifteen or more miles an hour in an outlying district of the city, no traffic upon the streets, no interfering noises, will make some noise as it approaches, and that its lights, exterior and interior, will convey some evidence of its approach to those who are on the lookout for it. We have said "at fifteen or more miles an hour," because the evidence fixes the speed of the car as "very fast" without attempting to approximate its speed, and as the city ordinance permits a speed of fifteen miles per hour in that section of the city, we think it can be safely assumed under the testimony that the car was running at least fifteen miles an hour. One of two conclusions is irrefutable; the appellant was either standing so close to the track that a car could not pass her with safety, or, attracted by Mrs. McCauley calling her name, she in turning inclined her head and the upper portion of her body towards the track. The fender of the car evidently passed her, and as she received the blow "about the center of the top of the forehead" and

on the right arm and shoulder, it is, we think, the more evident conclusion that, in turning toward Mrs. McCauley, she protruded her head and right shoulder beyond her body and into the passageway of the car. One of these situations is the true one; which one is immaterial. Her act was a proximate cause of her injury.

The law of contributory negligence is so well established and has been written in so many phases that nothing new can be now added. All that any discussion can do is to assert the principles which establish it, and these principles are so well known and understood that there is little room for discussion left. The facts must decide. As was said in *Keefe v. Seattle Elec. Co.*, 55 Wash. 448, 104 Pac. 774, "The facts declare the law in such cases." The basic principle of all the cases is: Was the injured person, at the time of the injury, exercising such care for personal safety as a person of ordinary care and prudence would exercise under like circumstances; and if not, was such lack of care a proximate cause of the injury? As the question is answered, contributory negligence is or is not established. It does not seem to us that, employing the test used in answering this question as a matter of law, the minds of reasonable men can differ in arriving at the conclusion that appellant was not exercising the required degree of care, and that her lack of it was a proximate cause of her injury. We accept appellant's citation from *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, that:

"When a court decides, as a matter of law, that an injured plaintiff is precluded from recovering damages for his injury, because of his own negligence contributing thereto, the court is in effect deciding that facts have been affirmatively proven which conclusively show, as a matter of law, such contributory negligence."

To our minds such facts as we have recited do so "conclusively show, as a matter of law, such contributory negligence." Much as courts would like to cast the whole burden

of finding contributory negligence upon the jury, there are cases in which that duty must be accepted and the court must pass upon undisputed facts, when its honest judgment, conscientiously expressed, leads to a firm conviction that but one determination can be reached in the minds of reasonable men.   Counsel for appellant seeks to avoid the legal force of appellant's knowledge of the condition of the street and that the cars in both directions ran on one track along the side of the street upon which the paving had been finished, by referring to appellant's testimony that she "did not know it that night," arguing that this brings her within the rule laid down in *Passage v. Stimson Mill Co.*, 52 Wash. 661, 101 Pac. 239, and other cases, that momentary forgetfulness of known dangers does not necessarily bar recovery by an injured servant.   Such rule, admitting its value in a proper case, has no application here.   As applied in the *Passage* case, it refers to the relation of master and servant.   A better case in support of this contention would be *Jordan v. Seattle,* 26 Wash. 61, 66 Pac. 114, not cited by counsel, where it was held that knowledge of a defective sidewalk would not in law preclude a recovery, where it appeared that the night was so dark the defect could not be seen and the injured person was using precautions to avoid it.   That case, however, and those which it follows, differ from this, from the fact that, while knowing the danger, the injured person was using precautions to escape it.   Here the appellant was making no use of her knowledge, nor attempting in any way to have it contribute to her safety.   Had her general knowledge of the situation not occurred to her, the red lanterns upon the street, the car at Indiana avenue waiting, as she was informed by her companion, for another car to come down, would recall to a person of ordinary prudence the fact that this car, following the custom she well knew, would not proceed until another car came down upon the same track.

Appellant cites *Beecher v. Long Island R. Co.*, 161 N. Y. 222, 55 N. E. 899. We can see no similarity between that case and this. There the evidence was such that the jury were justified in finding the railroad company had adopted a certain custom of starting its trains, and had continued it so long as to constitute an invitation to passengers to do the very thing the plaintiff was doing at the time of the injury, and the fact is pointed out as sustaining the judgment. *North Chicago St. R. Co. v. Irwin*, 202 Ill. 345, 66 N. E. 1077, is also relied upon. In that case the accident happened while the deceased was riding a bicycle in the space between the car tracks. He was traveling north, and the evidence tended to show that, hearing the approaching car, he ran onto the west track, which was the track customarily taken by south-bound cars, and which would have afforded him a safe passageway had the car been traveling north upon the east track as he had reason to believe it was. It appeared, however, that the car which killed the deceased was one of two cars that each night were sent to the car barn over the west or south-bound track. There was no evidence that deceased knew that these two cars customarily went north on the west track. These facts are given great prominence by the court in its opinion. The distinction between that case and this will be readily seen. There, there was no evidence of knowledge that the car was proceeding upon the west track. Here the appellant admits she had known such fact for a long time, but attempts to excuse such knowledge by inferring that she did not think of it that night, and had not observed the custom at this particular point. Her knowledge, however, embraced this custom wherever made necessary by the condition of the street, as to which side was completed and which uncompleted; and that knowledge did, by reason of the significant facts, cover this particular point. It, therefore, seems to us that the court below was justified in its ruling, and the same is sustained.

Some complaint is made that a new trial should have been

granted upon newly discovered evidence. This evidence all went to the negligence of the respondent, and is not material upon the question of contributory negligence, and hence upon that decisive point it was not error to rule against the new trial.

The judgment is affirmed.

Mount, Ellis, Fullerton, and Main, JJ., concur.