he was in actual possession of at least a portion of the farm, and defendant had no right to regain possession of such premises by force and violence.  Bristor v. Burr, 120 N. Y. 427, 24 N. E. 937, 8 L. R. A. 710; Michaels v. Fishel, 169 N. Y. 381, 389, 62 N. E. 425; Norton v. Arvernam Co., 14 App. Div. 581, 43 N. Y. Supp. 1099.

. The judgment and the order denying a motion for a new trial must be reversed, and a new trial granted; costs to abide the event.  All concur.

## BIGGERS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.  May 9, 1913.)

1. CARRIERS (§ 318*)—PASSENGERS—INJURIES—NEGLIGENCE.
   Evidence in an action against a railroad company for being struck by a train while plaintiff was crossing the track at the station to board the train *held* to show negligence by defendant in running its train across the line of movement of intended passengers in going to the place at which they were required to take the train.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. RAILROADS (§ 324*)—INJURIES ON TRACK.
   A pedestrian, in crossing a railroad track, must exercise some care.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. § 324.*]

3. CARRIERS (§ 327*)—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE.
   The failure of one, crossing railroad tracks at the station grounds for the purpose of taking passage to look for approaching trains, was contributory negligence, where she had an unobstructed view of the track for a long distance, and could have avoided being struck, had she looked.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1363–1366; Dec. Dig. § 327.*]

   Rich, J., dissenting.

Appeal from Trial, Term, Westchester County.

Action by Eda Warder Biggers against the New York Central & Hudson River Railroad Company.  From a judgment for plaintiff, and an order and an amended order denying defendant's motion for a new trial, defendant appeals.  Reversed, and judgment of dismissal directed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and STAPLETON, JJ.

John F. Brennan, of Yonkers, for appellant.
. Alexander Rosenthal, of New York City (Walter L. McCorkle, of New York City, on the brief), for respondent.

STAPLETON, J.  The appeal is from a judgment, entered upon the verdict of a jury, for $1,395.79, and from an order denying the defendant's motion to set aside the verdict and for a new trial, and from an amended order to the same effect.  The plaintiff recovered

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages for personal injuries, which the jury attributed to the sole negligence of the defendant. The evidence established the following facts:

Plaintiff, at the time of the casualty, was a young woman 20 years of age. She and a young woman companion, 19 years of age, intended to board, at Bronxville, a train bound for New York City and due to arrive at Bronxville at 4:19 p. m. They had return tickets, which had been purchased from the defendant earlier in the day, at New York City, before their departure for Bronxville. The directions of the railway are northerly and southerly. The south-bound trains run on the westerly track, and the north-bound trains on the easterly track. Pondfield Road crosses the tracks, and its directions are easterly and westerly. The station is south of Pondfield Road. The main station is on the easterly side of the tracks, and a small inclosure constitutes the station on the westerly side of the tracks. Between the tracks, for the entire distance of the station, there is an interlacing wire fence about 5 feet high. The length of the platform on the east side of the station is 377 feet, and its width 14 feet. There is a railroad gate at Pondfield Road, where that road crosses the railroad. Between the standards or uprights of the gate on the east side of the track the distance is 79 feet. There is a concrete path, leading to the station, on the southerly side of Pondfield Road. There is a clump of bushes south of this path and east of the easterly station. The plaintiff was a stranger in the locality, having been at the station only twice before. Her companion was familiar with it, having attended school in Bronxville for a considerable period of time. They came along the concrete path. The train they designed to take was approaching the station. The railroad gates were coming down. There was a well-worn path which intending passengers were accustomed to travel, when the gates were down, to reach the station on the opposite side of the tracks to board the south-bound trains. The course of the path was around the southerly end of the southerly standard of the gate. While crossing the easterly track, the plaintiff and her companion were struck by an electric train of the multiple unit type, approaching from the south; the calamity causing the death of the plaintiff's companion and the injuries for which plaintiff recovered.

The defendant arranged to have two passenger trains arrive from opposite directions. Ordinarily the train from the south was arrested south of the path which was customarily used. A bell in the flagman's shanty at the north side of the gate was ringing at the time that the young women reached the station. They were crossing hand in hand, walking rather briskly. Plaintiff listened for a train coming from the south. Plaintiff's witness Wylie testified that he was a surveyor; that the width of the easterly platform of the station was 12 feet; that the distance from the nearest part of the gate to the nearest rail of the up track was 6 feet 10 inches. Testifying as to the bushes referred to in the case, Wylie said:

"The bushes extend from the point nearest to the rail, back along Pondfield Road about 46 feet; that is, the first clump of bushes. The second clump, we will say that is about 80 feet back. The nearest point of the bushes is about 16 feet away from the nearest track, from the nearest rail."

One of plaintiff's witnesses said the height of the bushes was 9 or 10 feet; another said the height was 6 or 7 feet.

The witness Lewis, an engineer, testifying for the defendant, said he made accurate measurements of the locus in quo and observations from various points; that 15 feet from the east rail of the north-bound track—that is, after passing the western extremity of the bushes—an unobstructed view of 3,100 feet could be had; that at all points, after the bushes were passed, an unobstructed southerly view of the track could be had of 2,000 feet.

Plaintiff's testimony in relation to care on her part is as follows:

"As we neared the station I saw the south-bound train,.the one going in to New York, come pulling in; and I made the remark, I said, 'Mary, we had better hurry, or we will never make that train.' Her last words to me were, 'Oh, yes! we will,' and then we walked rather fast, and I remember passing those bushes. * * * Miss Powers went right .along with me. We were hand in hand; she was a little bit ahead: I was a little afraid; I had been out there twice before; I depended on her. After she had told me that we had plenty of time, that we could make it all right, after she assured me that we would make the train, I ceased to worry. Then I started to go for the train on the other track. I don't remember anything else until I woke up in the hospital. * * * I heard the bell on the train going to New York; no other bell; no whistle."

On cross-examination she said:

"When I came down on that platform, my eyes were looking at the train going to New York.   I didn't have time to look for the approach of the train coming up. I couldn't see for the bushes. I couldn't see any train. In watching my train going to New York, I glanced on the track and didn't see any. I did not look for a train coming from New York City. I didn't look for one; I wasn't expecting one; I made the glance, just as I was watching the south-bound train, the train going to New York, pull in the station. * * * Q. Then, from the time you were out on the road until the time you walked out on the platform and across the tracks, you didn't look for a train from New York? A. No; I was looking for my train going to New York. I did hurry; we were walking rather briskly."

She further said:

"I listened, but I did not hear. When I listened, it was right before you get to the bushes.   I wasn't listening for a train from New York City. * * * As I reached the end of the concrete walk, and as I turned to the left, I looked for the approach of the train. I did not see any. The concrete walk carries me out as far as the beginning of the border of the platform itself; that is, the extreme east side of the platform. * * * . Q. Had you stepped off the concrete going toward the track at the time you looked down for the approach of the locomotive or cars, whatever they might be? Had you stepped from the concrete—that is, reached the end of the concreting and stepped off to go south, or southwest, to reach the end of the gate—at the time you looked for the approach of a car or cars, or anything? A. I think I stepped off. I had gone off the concreting nearest the track at the time I say I looked for the approach of a car or something. Q. And about how much nearer to the track at that time were you than the end of the concrete, your rough judgment; had you gone one step? A. I saw one or two steps. At that time I neither saw nor heard any train. The reason that I listened, and the reason I looked, was in order to be safe, in going across the track."

On redirect examination she testified:

Q. Miss Biggers, in answer to the questions of Mr. Brennan, I understand you to say that you stopped on the Pondfield Road before you reached the concrete walk and listened? A. I didn't stop still; I listened. I had been

there at that station twice before. In my direct testimony I said I recalled nothing after I left the bushes. At the time I left the bushes, and after I left, I was looking at the train going to New York, the south-bound train. In so doing I glanced down the track. I saw or heard no train. They creep on you so quickly you can't hear."

[1] Contemplating the location of the station at Bronxville, considering the arrangement by the defendant of its schedule, whereby it designed to have two passenger trains arrive from opposite directions at the same point at precisely the same moment, and having in mind the custom of the patrons of the defendant, coming from the east, to use the path across the track to reach the station at which south-bound trains were boarded, and the custom of the defendant to stop its north-bound trains south of the path, defendant was negligent in running its train across the line of movement of persons intending to take passage on its south-bound train.

[2] Unless the plaintiff could exclusively rely for her safety upon the faculties of her companion, there is no probative evidence of her freedom from contributory negligence. We know of no authority which absolves a pedestrian from the exercise of some care. In this case there was no custom, with which plaintiff was familiar, upon which she was warranted in relying; there was no express invitation, with its implied assurance of safety, upon which she was justified in presuming; there was no credible evidence that she exercised her sense of sight. It was established to the point of demonstration that there was a reasonable zone of safety from which she had an unobstructed view, for a long distance, of the track upon which the train which struck her was moving. If she had looked, she could have seen its approach and avoided the collision. A statement that she looked and could not see is incredible.

[3] The failure to look it fatal to her recovery. Cranch v. Brooklyn Heights R. R. Co., 186 N. Y. 310, 78 N. E. 1078; Dolfini v. Erie R. R. Co., 178 N. Y. 1, 4, 70 N. E. 68. The plaintiff, to maintain her proposition that the question of contributory negligence in this case was for the jury, cites the following cases: Beecher v. Long Island R. R. Co., 161 N. Y. 222, 55 N. E. 899; Palmer v. N. Y. C. & H. R. R. Co., 112 N. Y. 234, 19 N. E. 678; Parsons v. N. Y. C. & H. R. R. Co., 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450; Terry v. Jewett, 78 N. Y. 338; Brassell v. N. Y. C. & H. R. R. R. Co., 84 N. Y. 241; Oldenburg v. N. Y. C. & H. R. R. Co., 124 N. Y. 414, 26 N. E. 1021. It is unnecessary to discuss those cases in this opinion, as all of them, except Oldenburg v. N. Y. C. & H. R. R. Co., ut supra, were considered by the Court of Appeals in Cranch v. Brooklyn Heights R. R. Co., supra, and the court, as a result of its examination of them, said:

"In all of those cases there were circumstances from which it was reasonable to draw the inference, either that such care had been exercised as was required in the circumstances, or that the necessity for such care had been obviated by conditions well calculated to lull a reasonably prudent person into a sense of security."

In the case of Oldenburg v. N. Y. C. & H. R. R. Co., the person whose conduct was under examination was a pedestrian crossing a

railroad where it was intersected by a city street. He was unfamiliar with the locality. The north safety gate, which was down as he approached, was raised, and he passed over some of the tracks in safety. There were obstructions which obscured his view, and while the pedestrian was on the tracks the gateman had begun to lower the south gate. This combination of circumstances suggests the propriety of sending that case to the jury as a question of fact upon the issue of contributory negligence, but affords no basis for the plaintiff's contention that the case is an authority favorable to her case.

Judgment and order reversed, with costs, and final judgment directed, dismissing plaintiff's complaint for failure to prove freedom from contributory negligence.

JENKS, P. J., and THOMAS and CARR, JJ., concur. RICH, J., dissents.