[No. 21041.  Department One.  February 27, 1928.]

JALMAR B. LARSON, *as Administrator, Appellant,* v.
TACOMA RAILWAY & POWER COMPANY,
*Respondent.*[1]

[1] STREET RAILWAYS (18)—INJURIES TO PERSONS ON TRACKS—CON-
TRIBUTORY NEGLIGENCE.  A pedestrian, crossing a street, is guilty
of contributory negligence, as a matter of law, precluding any
recovery for her death, where she stopped on the street car
track after seeing a car approaching more than one hundred
feet away, and made no move to get off the track.

[2] SAME (23)—INJURIES TO PERSONS ON TRACKS—LAST CLEAR
CHANCE.  The doctrine of last clear chance to avoid striking
a pedestrian on street railway tracks, does not apply where
there is no evidence that the motor man saw the decedent,
whose negligence did not terminate before the accident.

Appeal from a judgment of the superior court for
Pierce county, Ralston, J., entered November 19, 1926,
dismissing an action for wrongful death upon granting
a nonsuit at the close of plaintiff's evidence.  Affirmed.

*Lloyd & Croteau* and *C. D. Cunningham,* for appel-
lant.

*F. D. Oakley* and *L. L. Thompson,* for respondent.

MITCHELL, J.—Kathryn Larson of North Dakota was
killed on February 6, 1926, by a street car operated by
the Tacoma Railway & Power Company on Pacific
avenue in Tacoma, at or near the north sidewalk line
of Nineteenth street extended across the avenue.  The
avenue has a street car track on each side, near the
center of the avenue, the one on the west side for south
bound traffic and the other for north bound traffic.
Mrs. Larson was walking from the east side of the
avenue when she was struck by a north bound street

[1]Reported in 264 Pac. 419.

car. She was survived by her husband, Jalmar B. Larson, and four minor children. He qualified as administrator of her estate in North Dakota and as such administrator brought this action on behalf of himself and their children.

In substance, it was alleged in the complaint that the street car was being driven northerly at an excessive rate of speed under the city ordinance; that, as it approached Nineteenth street, an automobile was driven abreast of and three and one-half or four feet from it, on the east side at the same rate of speed, and that, as they approached Nineteenth street, the driver of the street car, without slackening the speed of the car or attempting to do so and failing to keep a proper lookout or any lookout at all, and entirely neglecting the rights of Kathryn Larson, drove the street car against her, causing her death; it being alleged that she at that time was exercising due care for her own safety. It was further alleged that, about that time, a street car going south on the other track was approaching Nineteenth street and that the motorman of the north bound car knew, or should have known, at a point far enough distant from the point of collision, that Kathryn Larson was in a place of peril from which she could not extricate herself and that, by the exercise of ordinary care, the motorman should have stopped the street car and avoided the injury. The answer was a general denial and a charge of contributory negligence, the latter being denied by the plaintiff.

At the conclusion of the plaintiff's case, the defendant moved for a dismissal of the action because (1) the plaintiff, as administrator by appointment in another state, has no legal capacity to sue in this state; (2) no negligence of defendant was shown; and (3) the deceased was guilty of contributory negligence as a matter of law. The motion was granted. A motion

for a new trial was denied, and from a judgment dismissing the action, with prejudice, the plaintiff has appealed.

A decision upon the question of the right of a foreign administrator to wage a suit of this kind in this state will be deferred, as we are satisfied the facts and circumstances of the accident involved lead to an affirmance of the judgment.

[1] It was proven that Mrs. Larson was killed, at the time mentioned, by a street car of the respondent going north on Pacific avenue twenty or twenty-five miles an hour as she was crossing it from the east. It is not entirely clear whether she was struck at the crossing or on the avenue near the crossing; however, we shall assume it was at the crossing. The accident happened about nine o'clock in the evening, the street lights were burning.

Leslie Anderson was the only person who saw the accident that testified at the trial. He testified that he boarded a south bound street car on the avenue north of Nineteenth street, that he was seated on the left hand side of the car near the front, facing south, and that when his car reached a point, variously estimated by him to be from one hundred and twenty-five to two hundred feet from Nineteenth street, he first saw Mrs. Larson standing on the street car track. He also testified:

"Well, as I seen her she was stopped right in the middle of this street car line, on my right side, and she turned—it looked to me like about half around, she was facing the street car, I was going south and she was walking straight across; in fact she was walking straight across the street and stopped, facing the street car that I was coming on, when she turned just kind of half around, and this other car, when I looked, was just across the street, looked to me at that time about across the street."

And again, he said:

"As I seen her, she turned, it seemed to me she turned half around, because we were still back here a little ways, and she turned round, turned facing as though she were looking right at the window that I was looking out of there, and she evidently looked like she didn't know what to do, whether to turn around and jump back, or try to jump ahead, and she evidently turned half around and stood there just kind of dazed, and she was standing there as the car came across and struck her."

When asked how far the north bound car that struck her was from her at the time he saw her on the street car track, he answered,

"Well, it looked to be, from where I was, just about the width of that street,"
referring, evidently, to Nineteenth street.

"Q. In feet, how far would you say? A. Well I would judge, oh—thirty feet."

On cross-examination on speaking of her standing on the track, he was asked,

"How long did she stand there then?" He answered,

"Well, I could not say for sure, because it all happened so quickly, . . . Q. Didn't she make any move at all? A. Well, sir, I say she turned about half around as though she were going to try to jump back. Q. Did she look at the coming street car at all? A. Yes, she was looking in that direction when I noticed her. She was looking at the two cars coming."

The testimony showed that both street cars were lighted.

Of course, the accident was most unfortunate, but she was at fault. Clearly, if one in a street car was able to see her so well one or two hundred feet distant, she was able to see the well lighted approaching street car, immediately nearby, in sufficient time to avoid stepping and stopping momentarily in front of it. If it be admitted that the respondent was negligent in running

the street car too fast, it must, nevertheless, be held as a matter of law that the deceased was guilty of contributory negligence resulting in her injury.

[2] Appellant further contends that, under the allegations of the complaint and the evidence in the case, the rule of the last clear chance was involved, for which reason the case should have gone to the jury. In *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302, it was stated that in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, endeavor was made to clarify this doctrine, defining two separate conditions under which it is applicable. Those conditions were then enumerated as set out in the *Mosso v. Stanton* case and then, expressing the same view in more concise language, it was said:

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen it.*"

To the same effect is the more recent case of *Johnson v. Seattle*, 141 Wash. 385, 250 Pac. 409.

Appellant does not contend, as we understand, that this case falls within the first situation, since there was no testimony that the motorman *actually* saw the deceased before the car struck her. On the contrary, the only testimony on the subject was that, a few minutes after the accident and while the motorman was still laboring under excitement caused by the accident, he declared that he "didn't see her until he struck her."

The second situation consists of a compound proposition, viz: (1) the termination of plaintiff's negligence, (2) the defendant not actually seeing the peril, and (3)

could by the exercise of reasonable care have seen it. Nothing less than all are required. During the short period of time the peril existed in this case, she was wholly free to avoid it, if possible to be avoided, by any means whatever. Her negligence had not terminated.

Affirmed.

MACKINTOSH, C. J., PARKER, FRENCH, and TOLMAN, JJ., concur.