[No. 25166.   Department One.   December 10, 1934.]
FRIEDA HOHMAN, *Respondent,* v. THE CITY OF SEATTLE,
*Appellant.*[1]

*A. C. Van Soelen, C. C. McCullough,* and *John A.
Logan,* for appellant.
*William Martin, William J. Truscott,* and *Altha P.
Curry,* for respondent.

MILLARD, J.—This is an action against the city of
Seattle to recover for personal injuries alleged to have
been sustained by the plaintiff as the result of being
struck by one of defendant's street cars while it was
negligently operated by one of defendant's employees.
From judgment on the verdict in favor of the plain-
tiff, motion for judgment notwithstanding the verdict
having been denied, the defendant appealed.

Appellant does not claim that it was not guilty of
negligence.   The appeal presents only one question

[1]Reported in 38 P. (2d) 242.

for determination: Did respondent's negligence contribute to her injury to such a degree as to require the court to hold, as a matter of law, that it barred her right to a recovery?

Ordinarily, the question of contributory negligence is for the jury. A court will determine the question only when but one reasonable conclusion can be reached from a given state of facts. The facts, which are summarized as follows, obviously preclude the application of the exception to the rule requiring the submitting to the jury of the question of contributory negligence:

Appellant operates a double track street railway on Westlake avenue along the west shore of Lake Union in the city of Seattle. The avenue proper is physically separated from, but is immediately adjacent to or abuts, the area occupied by the street car tracks. The course of the avenue is northerly and southerly. The paved area is divided into two parts by a dirt strip six feet in width. The east curb is about eighteen inches high. East of this curb is an unpaved area along the west shore of the lake, in which is located the double track system for street cars. This area is not open for vehicular travel, the rails and ties being open and uncovered as on the ordinary railroad tracks. North-bound street cars travel on the east track; south-bound cars proceed on the west track.

The accident occurred about 1:15 p. m., July 10, 1931, at a point where Newton street, if extended, would intersect Westlake avenue. That street does not extend over or across the car tracks. At this point is a loading and unloading platform for traffic in each direction; that is, there are two platforms parallel with the tracks, each six feet wide, sixty feet long and eighteen inches high, or the height of the

curb of the pavement. One platform is between the curb and pavement edge and the west rail of the west track (the south-bound track); the other is east of the east (the north-bound) track. There is a cross-walk at both ends across the tracks, connecting the ends of the two platforms. There is also a guard rail along the above mentioned curb separating the paved street from the west platform, with an entrance to the street at the north end of the platform. A clear and unobstructed view for more than one thousand feet may be had from the vicinity of the platform.

Respondent left her place of residence, a houseboat on Lake Union, to go down town on a south-bound street car. She walked up a flight of steps to the street level of Westlake and Newton street, where she paused a moment, looked to the east, then walked to the vicinity of the steps at the north end of the loading platform. She looked to the north, and saw an approaching south-bound car about three hundred and fifty feet to the north. At that time, she was near the east side of the east passenger platform, or about thirty feet from the west platform from which she intended to board the approaching street car. She then signalled to the motorman by waving a shopping bag over her head and started across the east car tracks. Before crossing the easterly tracks, she looked to the south for north-bound cars. She stepped onto the westerly car tracks, when she saw the south-bound car, as she testified, ''right on her.'' She leaped in the direction of the platform and actually got to it, but her clothing became tangled or caught in some portion of the street car, and she was dragged the full length of the platform and to a short distance beyond.

There was testimony that no bell was rung, no alarm

given; that the car's speed was thirty miles or more an hour when it struck respondent, and that the car traveled a distance of more than one hundred and forty feet after it struck respondent. Passengers on the street car testified that they saw respondent when the car was from one-half to three blocks distant from her. It is clear that the motorman was not watching the track ahead of him, and that he was traveling at an excessive rate of speed.

Respondent had the right to assume that the motorman was keeping watch ahead, that he saw her signal her intention of becoming a passenger and would stop, and that he would not approach the crossing at other than a reasonable rate of speed.

We held in *Johnson v. Seattle,* 141 Wash. 385, 250 Pac. 409, that the contributory negligence of a pedestrian, crossing the street car tracks to the loading platform, as in the case at bar, is a question for the jury, where it appears that the plaintiff looked and saw a car about one-half a block distant, coming slowly, and thought he had plenty of time to cross, which others were doing at the time, and that the car increased its speed as it neared the platform, without stopping for passengers and without warning until within a few feet of him. In the case at bar, no warning was ever given. In that case, as in the case at bar, the intending passenger, before leaving the outbound platform, looked to his right and saw an inbound car approaching about one-half a block away, and he thought it would stop to take on passengers. Thinking, as did respondent, that he had sufficient time, he attempted to cross ahead of the car. He did not look again until he was stepping onto the inbound track, when he saw the car right on him. He endeavored to leap to the inbound platform, but was

short thereof when the car struck him. The facts are almost the same as in the case at bar. We said:

"The appellant's most serious contention is that the plaintiff was, as a matter of law, guilty of negligence which contributed to his injury, and therefore cannot recover. As previously noted, his testimony showed that, before he left the outbound platform, he looked to his right to see if any inbound car was coming, and saw the one in question, which was then about half a block away, and that it was coming rather slowly. He thought he had plenty of time to cross the tracks before the car would reach him. There was also testimony to the effect that, as the car came closer to Lander street, it increased its speed. Other testimony showed that other persons were crossing these tracks at about the same time the respondent was, one man in particular being only a part of a step ahead of him. Under these facts, we cannot say, as a matter of law, that the respondent was guilty of negligence. We are, therefore, of the opinion that the case was properly submitted to the jury on the question of the negligence of the motorman and of the respondent."

The facts in the instant case are more strongly in favor of the respondent, who signalled the car to stop and had the right to assume that the motorman would heed that signal.

To the same effect is *Switzer v. Seattle,* 159 Wash. 540, 294 Pac. 225, in which we held that the question of contributory negligence was for the jury, and said:

"The alleged contributory negligence of respondent was also a question of fact for the jury under the circumstances shown in this case. Inasmuch as respondent and her father testified that they were standing at the extreme end of the passenger platform on the third plank back from the westerly rail, and that a signal had been given to the motorman to stop the car, they had the right to assume that the car would stop before it struck them, or either of them, if either of them was in a position of danger. The car could easily have been stopped by the motorman after the signal

had been given before reaching the place where respondent stood, and if she stood at the extreme end of the platform, as she testified, it was absolutely necessary that he should have done so or she could not have entered the car when the door was opened. Moreover, if she were in a position of danger from the overhanging of the car or anything that might project from the side of the car, the motorman, as the operator of the car was presumed to know such things and protect intending passengers from danger. A much higher duty is, of course, due to passengers, or intended passengers, upon public conveyances than is owed to those merely using the streets or highways as crossings.''

We have consistently held, on facts like those in the case at bar, that the question of contributory negligence is one of fact for the jury to decide, and not a question of law for the court to decide.

The judgment is affirmed.

BEALS, C. J., MAIN, MITCHELL, and TOLMAN, JJ., concur.