[No. 27905. *En Banc.* February 8, 1941.]

GRACE HYNEK, *as Administratrix, Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 111 P. (2d) 247.

*A. C. Van Soelen* and *C. C. McCullough,* for appellant.

*Padden & Moriarty* and *Wendell W. Duncan,* for respondent.

SIMPSON, J.—Plaintiff brought this action as administratrix of the estate of her deceased husband, William Hynek, for her own benefit and that of the four minor children of herself and William Hynek.

The complaint alleged that the city of Seattle maintains and operates a street car line upon Fifteenth avenue west, crossing west Boston street; that the tracks of the street car line extend in a northerly and southerly direction upon Fifteenth avenue west and across west Boston street, which runs in an easterly and westerly direction.

The complaint further alleged that February 22, 1938, between the hours of six-thirty p. m. and seven p. m., William Hynek, having the intention of becoming a passenger upon a south bound street car upon Fifteenth avenue west, was crossing that avenue from the east to the west on the southerly crosswalk of west Boston street; that, as he crossed the intersection, he signalled the operator of the street car of his intention to board the car; that, when William Hynek was at a place in the immediate vicinity of the easterly rail of the westerly car track, on which the car was approaching, he was struck and instantly killed by the street car.

The complaint then set out several charges of negligence on the part of the operator of the street car, which included failure to keep a proper lookout ahead, to keep the car under control, to heed the signal of Wil-

liam Hynek to slow down at the usual stopping place, to apply the brakes, to avoid a collision with deceased, and to use reasonable care in the street car's operation; and in operating it at a dangerous speed of thirty-five miles per hour. Allegations followed relative to the ability of William Hynek to care for and support his family.

The answer contained a general denial of the allegations contained in the complaint and two affirmative defenses. The first affirmative defense pleaded ordinance No. 64692 of the city of Seattle, while the second affirmative defense pleaded contributory negligence on the part of William Hynek. The reply put in issue the allegations contained in the answer.

The case was tried to the court sitting with a jury, and resulted in a verdict in favor of plaintiff. After denying a motion for judgment n. o. v., or, in the alternative, for a new trial, the court entered judgment upon the verdict. The city of Seattle has appealed.

The assignments of error are: (1) Failure to sustain appellant's challenge to the sufficiency of the evidence to show primary negligence; (2) failure to decide as a matter of law that the negligence of the deceased was the direct, proximate cause of the accident; (3) refusing to grant appellant's judgment *non obstante veredicto;* and (4) refusing to grant appellant a new trial. Error was also predicated upon the giving of certain instructions.

The material facts are not in dispute. A brief summation of those most favorable to the respondent will suffice for the points to be considered. The deceased was thirty-nine years of age and in possession of all his faculties. He had owned and operated a cheese factory for about fifteen years in Faithhorn, Michigan. Other occupations in which he had been engaged were carpenter work, work in the fur business, and farming

in Alaska. The Hyneks arrived in Seattle a few days before the night of the fatal accident, having lived in small rural communities for many years, and were not familiar with the operation of street cars in the city of Seattle. This lack of familiarity extended to the knowledge of the side of an intersection on which street cars ordinarily stopped.

The accident in question took place at Fifteenth avenue west and west Boston street in Seattle. Fifteenth avenue west runs north and south and is paved for a width of about 53½ feet from curb to curb, and slopes to the south on a 2.2 grade. There are two street car tracks in the center of the street. West Boston street extends east and west. It is improved east of Fifteenth avenue west, but is not improved west thereof. The customary place for taking on passengers for south bound street cars is at the north side of west Boston street, which is the northwest corner of the intersection. A building known as the "Finnish Hall" stands at the southeast corner of the intersection, and another known as the "Mattress Factory" is located on the northwest corner of the intersection. A store called the "White Building" is situated on the west side of Fifteenth avenue approximately 280 feet north of the intersection.

Shortly prior to the accident, which happened between six-thirty and seven p. m. on a dark and rainy evening, Mr. and Mrs. Hynek, intending to go down town, walked west on west Boston street and stopped under the canopy of the building on the southeast corner of the intersection. Their intention was to wait for a south bound street car. They waited under the canopy for some time and finally observed the lights and headlight of an approaching street car coming from the north at a distance of approximately 705 feet. They then stepped out toward the street, intending to board

that car. They walked to the west in a direct line with the south sidewalk of west Boston street.

In describing the acts of herself and husband, respondent testified:

"Q. When you saw those lights, what did you do? A. We started to go across the street. Q. Where did you go to? A. We went to the right-hand side of the telephone pole. Q. Do you mean to the— A. To the north. Q. You walked out to the telephone pole? A. Yes, to the north side of the telephone pole. Q. When you got there, did you step into the street immediately? A. No, we didn't. Q. What did you do? A. There was two cars coming from the south, and we waited until those two cars went through. Q. Was there any other traffic from the south? A. There was traffic, but quite a ways down. Q. Where was that traffic traveling, with reference to the middle of the street? What did it look to you like? A. Upon on the pavement, in the center of the street. Q. You say you stood there to let those cars go by? A. Yes sir. Q. Did you step into the street then? A. After the cars went through, we did. Q. Did you see this car again, after you saw it at West Wheeler Street, and before you actually stepped into the street? A. Yes, we did. I saw it coming down by this white building there. Q. Did you know what was a white building at that time? A. I didn't know what it was, at that time. Q. Do you remember this light up the street? A. Yes. Q. And that is how you locate it now? A. Yes. Q. So you were in this vicinity someplace? A. Yes. Q. When you stepped off the curb? A. Yes. Q. In which direction did you travel when you stepped off the curb, in this angle, or that angle, or did you go directly across on the crosswalk? A. Directly across. . . . Q. When you saw this car, somewhere in the vicinity of this white building, you say you proceeded to walk across the street? A. Yes sir. Q. Tell us what Mr. Hynek was doing at that time, when you stepped off the sidewalk. A. When I stepped off the sidewalk, he let go of my arm, and he started on across. Q. He helped you off the curb? A. Yes. Q. And you proceeded across the street? A. Yes. Q. Was he ahead

of you? A. He was. Q. How far do you think he was walking ahead of you, in your best judgment? A. I should judge about a foot or a foot and a half. Q. Were you directly behind him? A. Yes sir. Q. When you walked across the street, going across the street did you keep your eye on the car? A. Yes, I did. Q. Did you do anything with reference to this car you saw coming up the center of the street? A. Yes, I did. Q. What did you do? A. When we got about half-way in the concrete there, I glanced to the south . . . Q. You say you were watching this car coming down? A. Yes. Q. Did your husband continue to go right ahead? A. Yes, sir, he did. Q. Do you know whether he was watching for the car, too? A. He was. Q. As you approached this easterly cartrack here, and when you turned back, did you see the car coming in here, again? (Indicating) A. Yes sir, I did. Q. Where was it when you saw it again there? A. It was — Q. Here is the Imperial Mattress Company's building. Where was it, with reference to being north of that? I want you to locate it with reference to that building. A. It was in between the white building and the — Q. Somewhere between this place and this one? A. Yes sir. Q. What was your husband doing then, and what were you doing? A. We were watching the streetcar. Q. Were you doing anything else? A. No; just walking across. Q. Did you give any signal to the car? A. Yes, I did. Q. What was your husband doing? A. We were both waving our hands. Q. You were both waving your hands? A. Yes. Q. When you saw this car approaching this mattress factory, did you keep your eye on it? A. Yes sir. Q. What did it do? A. It slowed down, when it got close to this Imperial Mattress building. Q. What did you think it was going to do? A. I knew it was going to stop, after he started to slow down. Q. That was after you gave the signal? A. Yes. Q. So after you gave the signal, was it your opinion that the car was slowing down as the result of your signal? A. It was. Q. Did the car ring any bell in there anyplace? A. I didn't hear it. Q. Would you have heard it, if it had been rung? A. Yes. Q. When you saw it in there and it was slowing

down, where was your husband then, and where were you walking then, with reference to the car-tracks? A. When he was thrown down, my husband was already on the next rail. Q. This one, or this one? (Indicating) Mr. McCullough: The record will not show that. Q. Your recollection. A. The east one of the west rails. Q. All right. Did you watch the car, as it progressed? A. Yes, I did. Q. And what happened? A. When he — When I was in between the two tracks and he was on the track, I noticed that the car wasn't going to stop. Q. Where was it? A. It was just coming into the intersection. Q. Coming into the intersection. Had the car increased its speed or decreased its speed, or have the same speed? A. When the car got to the edge of the intersection, it was gaining speed. Q. You saw it, did you? A. Yes, I did. Q. What did you do? A. I yelled at my husband, and I said, 'The car isn't going to stop.' And I jumped back. And he was startled, and he jumped. He immediately jumped back; and the car hit him. And I jumped back."

On cross-examination, she testified:

"Q. Did you warn your husband, prior to his being hit? A. Yes, I did. Q. Do you remember telling him, 'I don't think we can make it?' A. Yes. Q. Where was the streetcar? A. The streetcar was coming into the intersection. Q. The street car was coming into the intersection? A. Yes. Q. Let's point that out. Here is the sidewalk line, and that line, continued out, would be about like my pencil. Point to where the front of the car was, in coming into the intersection. A. About there. (Indicating) Q. X-5. That is where the streetcar was when you told your husband you didn't think you could make it? A. Yes. Q. You hadn't reached the streetcar tracks yet? A. No. Q. And he was about a foot and a half ahead of you? A. Yes."

As indicated on a map introduced in evidence, X-5, referred to by respondent, was a point indicating the north boundary of the intersection fifty feet north of the place where Mr. Hynek was struck.

The motorman, during the time Mr. and Mrs. Hynek were walking across the street, was looking for intending passengers on the northwest corner of the intersection at the customary stopping place, and he failed to see Mr. and Mrs. Hynek until the car was but a few feet away from them, at which time it was impossible to stop the car quickly enough to avoid the accident. The motorman, having failed to see anyone waiting at the usual stopping place, had released his brakes as he entered the intersection, causing the car to accelerate its speed.

The evidence showed that an incandescent light was located some distance north of the intersection and an arc light was over the intersection; that the visibility, in spite of the rain, was adequate to bring persons on the crosswalk within the light reflected from the arc light. It was also shown that, although the motorman "dynamited" his car when he first saw Mr. and Mrs. Hynek, his car traveled some two hundred feet before it came to a stop. "Dynamiting" a car was explained as the application of the air brakes and the throwing of the controls into reverse. Respondent testified that the car was going "terribly fast," at a speed of thirty-five or forty miles per hour, at the time of the collision. Her estimate of speed was based upon comparing the speed of the street car with that of an imaginary automobile traveling at the same place, respondent being an experienced driver. Her observation was made from the time the car was from fifty feet away until the time of the impact.

For the purposes of this case, we will assume, without deciding, that the motorman was negligent, and therefore will discuss but two propositions presented, that of contributory negligence and of last clear chance. In doing so, we are mindful of the rule

that the evidence must be considered most favorably to respondent and that the question of contributory negligence was for the jury, unless we can say that the deceased was guilty of contributory negligence as a matter of law. *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P. (2d) 749.

Restatement of the Law, Torts, 1227, § 463, defines contributory negligence as follows:

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

It is said in the comment:

"Contributory negligence differs from that negligence which subjects the actor to liability for harm done to others in one important particular. Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. In the one case the reasonable man, whose conduct furnishes the standard to which all normal adults must conform, is a person who pays reasonable regard to the safety of others; in the other, the reasonable man is a reasonably prudent man, who as such pays reasonable regard to his own safety."

In § 465, the Restatement says:

"The plaintiff's negligent exposure of himself to danger or his failure to exercise reasonable care for his own protection is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility because of the manner in which his conduct contributed to his harm."

The principal case upon which the doctrine of contributory negligence is founded is that of *Butterfield v.*

*Forrester*, 11 East. 60, 61, 103 Eng. Reprint 927, 19 E. R. C. 189, in which Lord Ellenborough said:

"One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

In 45 C. J. 941, 942, and 943, § 500, we find the following:

"The doctrine of contributory negligence rests in the law of tort as applied to negligence, and is governed by the principles peculiarly applicable to that branch of jurisprudence.

"Different reasons have been assigned by the courts as the basis of the doctrine that contributory negligence bars recovery for injuries negligently inflicted. It has been asserted that it is an application of the doctrine of proximate cause; that it is founded upon the ground that the law will not undertake to apportion the consequences of concurring acts of negligence; and that it is an application of the rule, expressed in the maxim, Volenti non fit injuria, that one who invites an injury cannot make it the basis of a recovery. Still another view finding favor with the courts is that the rule precluding recovery is in the nature of a penalty, established by public policy, to admonish all to use due care for their own safety. In other words, the doctrine is said to be founded on the impolicy of allowing a party to recover for his own wrong, and the policy of making personal interests of men dependent upon their own prudence and care.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause. Contributory negligence is usually the personal default of plaintiff; and it must be either his own or that of some one whose negligence is legally attributed to him. It has been said that

there is no substantial distinction or essential difference between negligence for which defendant is responsible and contributory negligence, and the rules of law applicable to the former are, in general, applicable to the latter. As in the case of defendant's negligence, contributory negligence may be due to either acts of omission or commission. In other words, contributory negligence may consist in doing the wrong thing at the time and place in question, or it may arise from doing nothing when something should have been done."

In Beach on Contributory Negligence (3rd ed.), 50, § 35, we find the following summary statement of the doctrine of contributory negligence as a defense:

"However it may have been expressed, the principle underlying all these decisions seems to be, and verily it is the only sound basis upon which they can rest, that whenever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, as a proximate cause of the injury for which he brings his action, his right to recover is thereby destroyed. Anything more than this imposes upon the plaintiff the duty of exercising more than ordinary care, and refuses him a remedy for injuries that others inflict upon him; and anything less than this, covered up never so mistily in belabored and confusing legal phraseology, imposes upon the defendant the duty of exercising more than ordinary care, requires him to take better care of the plaintiff than the law requires the plaintiff to take of himself, and compels him to pay damages for injuries that he did not inflict. There can be no middle ground; either the truth of these elementary propositions must be conceded or the whole theory of our modern law of contributory negligence must be abandoned. Without this it is a theory of oppression and injustice. There is no room for it in the common law."

The supreme court of the United States, in the case of *Railroad Co. v. Gladmon,* 82 U. S. 401, 21 L. Ed. 114, made the following statement:

"By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another."

This court, conforming to the general rule, has defined contributory negligence as some act or omission on the part of the injured person, which caused, or contributed to cause, the injury, and that such act or omission was not such as would have been done or omitted by a person exercising ordinary prudence under the circumstances. *Williams v. Ballard Lumber Co.*, 41 Wash. 338, 83 Pac. 323; *Akin v. Bradley Engineering & Machinery Co.*, 51 Wash. 658, 99 Pac. 1038; *Chadwick v. Ek*, 1 Wn. (2d) 117, 95 P. (2d) 398; *Morris v. Chicago, M. St. P. & P. R. Co.*, 1 Wn. (2d) 587, 97 P. (2d) 119, 100 P. (2d) 19.

It will be noted that the burden of proving contributory negligence is borne by the defendant, although the plaintiff's evidence or pleadings may serve the function of showing his own contributory negligence. *Northern Pac. R. Co. v. Hess*, 2 Wash. 383, 26 Pac. 866; *Spurrier v. Front St. Cable R. Co.*, 3 Wash. 659, 29 Pac. 346; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551, 35 L. Ed. 270, 11 S. Ct. 653; *Washington & Georgetown R. Co. v. Harmon*, 147 U. S. 571, 37 L. Ed. 284, 13 S. Ct. 557.

Ordinarily, of course, the question of whether or not there has been negligence or contributory negligence is one for the jury. However, there are factual situations which make it possible for the court to find negligence or contributory negligence as a matter of law, the rule being as follows:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are

such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 36 L. Ed. 485, 12 S. Ct. 679.

In *Chadwick v. Ek,* 1 Wn. (2d) 117, 95 P. (2d) 398, we stated:

"The rule upon the subject, as declared by this court, is that in only two classes of cases may the question of contributory negligence be determined by the court as a conclusion of law: (1) Where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law and are the same under all circumstances; (2) where the facts are undisputed and but one reasonable inference can be drawn from them."

Other cases announcing the same rule are *Henry v. Seattle Electric Co.,* 55 Wash. 444, 104 Pac. 776; *Jackman v. Seattle,* 187 Wash. 446, 60 P. (2d) 78; and *Poland v. Seattle,* 200 Wash. 208, 93 P. (2d) 379.

As for the application of the doctrine of contributory negligence to persons or vehicles crossing over street car tracks, the case of *Nappli v. Seattle, R. & S. R. Co.,* 61 Wash. 171, 112 Pac. 89, sets forth the following general statements:

"The question in the case is whether the court should have said, as a matter of law, that the respondent was guilty of contributory negligence in crossing the street car tracks as he did. If respondent drove his team in front of a car which he knew, or should have known, was coming down upon him and could not be stopped, he is himself negligent and cannot recover. The rule, we think, is correctly stated in *McCarthy v. Consolidated R. Co.,* 79 Conn. 73, 63 Atl. 725, and cited by the appellant, as follows:

" 'At highway crossings, a street car has no paramount right as against any other vehicle approaching on the cross street. The right attaching to each is equal, and must be exercised with due regard to that

attaching to the other, and so as not to interfere with or abridge it unreasonably. It is not necessarily the duty of the driver of an approaching team to wait until the street car has passed, nor is it necessarily his right to push on and cut off its advance. Each party must act reasonably under all the attending circumstances. The driver of an ordinary vehicle can, under ordinary circumstances, be justified in proceeding, at a highway crossing, to go over a street railway in the face of an approaching car, when, and only when, he has reasonable ground for believing that he can pass in safety if both he and those in charge of the car act with reasonable regard to the rights of each other. The duty to slow up or stop, if necessary to prevent a collision, rests equally on each party. In practical effect these doctrines give any railroad car approaching a highway crossing, what amounts to a right of precedence. This follows from the rule respecting contributory negligence. No man has the right to calculate close chances as to his ability to reach the track before the car, and throw the risk of injury on the other party. As to whether the chances were close, however, and the railroad company were not the one really in fault, or whether the party injured did not push forward under circumstances of emergency which left him no time for calculation, will ordinarily be a question for the jury.'

". . . If the approaching car is so close and coming so fast that it cannot be stopped in time to avoid a collision, and such facts are or should be observed, then a person attempting to cross may be said to be negligent as a matter of law. But where an approaching car is far enough away to be stopped after a person has passed upon the tracks, or when a reasonably careful man would undertake to cross ahead of it, then it cannot be said, as a matter of law, that a person attempting to cross is negligent. This rule was substantially applied in *Denny v. Seattle, Renton & Southern R. Co.,* 60 Wash. 426, 111 Pac. 450."

Again in *Armstrong v. Spokane & Inland Empire R. Co.,* 71 Wash. 624, 129 Pac. 379, we stated:

"The basic principle of all the cases is: Was the injured person, at the time of the injury, exercising such care for personal safety as a person of ordinary care and prudence would exercise under like circumstances; and if not, was such lack of care a proximate cause of the injury? As the question is answered, contributory negligence is or is not established."

It should be noted that we have held in a number of cases that the "stop, look, and listen" rule, ordinarily applied in railroad cases, is not applied to street car cases, and that it is not necessarily negligence *per se* for one to enter upon street car tracks without stopping, looking, and listening. *Roberts v. Spokane Street R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214; *Morris v. Seattle, R. & S. R. Co.*, 66 Wash. 691, 120 Pac. 534; *Slipper v. Seattle Electric Co.*, 71 Wash. 279, 128 Pac. 233.

In those cases, we indicated that the same degree of care is required of street cars as is required of pedestrians or others crossing over the street car tracks. In other words, we found reciprocal duties on the part of both to avoid injuries, and imposed no greater degree of care upon those crossing over the tracks than upon those operating street cars upon them.

In line with our holdings to the effect that the duties in cases of this type are reciprocal, and that each party must use reasonable and ordinary care to avoid accidents, we have recognized the right of those crossing over street car tracks to rely upon an assumption that street car operators will exercise that degree of care, and we have many times held that it is not necessarily contributory negligence as a matter of law for persons to enter upon car tracks in the path of oncoming street cars. *Richmond v. Tacoma R. & P. Co.*, 67 Wash. 444, 122 Pac. 351.

At the same time, we have recognized a right on the part of operators of street cars to rely upon the assumption that those crossing the tracks will use due care, and they may do so until the conduct of such persons warns them to the contrary. *Fluhart v. Seattle Electric Co.*, 65 Wash. 291, 118 Pac. 51; *Johnson v. Washington Water Power Co.*, 73 Wash. 616, 132 Pac. 392. As for the right to those crossing the tracks to continue to assume that street car operators will exercise due care to avoid hitting them, it is not an absolute one, of course.

"A person must, nevertheless, exercise ordinary care for his own protection against injury. He may not rely upon the assumption that others will not be guilty of any breach of their duty to avoid injuring him where, under the same or similar circumstances, an ordinarily prudent person would not do so." 45 C. J. 956, § 512.

■ One further generality merits our attention before we look to the particular type of factual situation with which we are here confronted. This rule was expressed by us in *Hull v. Seattle, R. & S. R. Co.*, 60 Wash. 162, 110 Pac. 804, as follows:

"A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they appeared to one in his then situation—and if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence."

We now shall consider a number of cases in this jurisdiction and in others dealing with the type of factual situation with which we find ourselves faced in the instant case.

In *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214, a pedestrian crossed a double track without looking or listening to learn whether a car was ap-

proaching, and he was injured by a car coming suddenly over the top of the hill upon which he was walking. In that case, we held that the plaintiff's contributory negligence presented a question for the jury. It is distinguishable from the case at bar in that the plaintiff had no actual knowledge of the approach of the street car, and reasonable men could differ as to whether or not he was negligent in entering upon the tracks without first determining whether or not he was safe.

In *Chisholm v. Seattle Electric Co.*, 27 Wash. 237, 67 Pac. 601, a pedestrian looked for cars when he left the sidewalk to cross a busy downtown street. He saw two going south, but none moving north. He was then hit by a car going north. We held that there was no contributory negligence as a matter of law, and that it was a jury question. There, too, however, we dealt with facts which differed from those in the case at bar, since there was no actual knowledge that a car was approaching, and no showing that had the plaintiff exercised his senses, he must have seen the approaching car.

In *Skinner v. Tacoma R. & P. Co.*, 46 Wash. 122, 89 Pac. 488, the plaintiff entered a street and started walking toward the car tracks, which were some thirty feet away. The evidence was to the effect that the approaching street car's headlight was burning and that the car was readily visible all the time from the moment he left the curb until the moment of impact. It was further shown that the street car was but ten feet away from the plaintiff at the time he stepped upon the track, and there was no likely chance of getting over the track before the car would reach the spot, considering its rate of speed. Plaintiff's daughter, who was accompanying him across the street, saw the oncoming car just as they stepped upon the tracks,

stepped back, and called to and caught at her father, but he was struck before she could get him out of danger. In that case, we held that there was contributory negligence as a matter of law, even though the evidence was to the effect that the plaintiff had no actual knowledge of the approach of the street car. We deemed the facts to warrant a conclusion that the only reason for not knowing that the car was approaching must have been an utter disregard by the plaintiff of ordinary precautions.

In *Helliesen v. Seattle Electric Co.,* 56 Wash. 278, 105 Pac. 458, the plaintiff contended that she looked for approaching street cars a short time before she entered the space between the car tracks, and failed to see any at all. The plaintiff was familiar with the street and knew that street cars were wont to pass at that point. In holding that the plaintiff was contributorily negligent in that case, we stated that, although the general rule may be that it is not necessarily contributory negligence *per se* to enter upon street car tracks without looking and listening, the fact still remains that one cannot heedlessly and carelessly cross tracks without using his senses to protect himself, and it does not follow that one can shut his eyes and ears to matters which he must have seen and heard, had he exercised ordinary care. We then held that, since the plaintiff must have known of the oncoming car, it was clearly negligent to have crossed upon the tracks when it was almost upon her.

In passing upon the facts, this court expressed its view as follows:

"We cannot understand how one looking for a car can fail to see a lighted car with its headlight throwing on the track ahead of it, and only forty-two feet away. The physical facts of the situation are a unit in showing respondent could not have used ordinary care in attempting the crossing. If she looked she must have seen the

car, or else she gave such an indifferent and casual glance as was of no value to her in determining whether or not a car was approaching. In either event, she was not using ordinary care. The car was there with its lights burning, and such a look as would be given by an ordinary, prudent person would have located it. Pedestrians in crossing the tracks of a street railway in the daytime or in the nighttime, knowing as respondent knew that the crossing was one where cars frequently passed, must use their senses to apprise them of danger, if any; they cannot heedlessly and carelessly cross the track, and throw the entire burden of their safety upon the motorman of any approaching car. The rights of the pedestrian and that of the street railway are equal. Their duties are reciprocal. Neither has the exclusive right of way; each must have due regard to the rights of the other."

In *Fluhart v. Seattle Electric Co., supra,* we again held that, when the facts were such that plaintiff must have seen the approaching street car, which was well illuminated, it was contributory negligence as a matter of law to step in front of it when it was but a short distance away and going at a rapid rate of speed.

*Richmond v. Tacoma R. & P. Co., supra,* also involved a case where the plaintiff claimed that he looked for approaching street cars, but failed to see any. The factual situation was somewhat different from those prevailing in the last two cases cited, however. The range of vision along the car track at the time the plaintiff entered the street was only about two hundred feet, and at that time no car could be seen. The car of defendant was greatly exceeding the speed limit, and rushed down upon the plaintiff as he was upon the track. Under those facts, we held that the question of contributory negligence was for the jury to determine.

In *Beeman v. Puget Sound Traction L. & P. Co.,* 79 Wash. 137, 139 Pac. 1087, the plaintiff, when about to step from the sidewalk, looked along the tracks and saw

a street car about four hundred and fifty feet away. The headlight was burning. The plaintiff proceeded to pick his way across the muddy street, paying no further attention to the oncoming street car, and was struck by it as he stepped upon the tracks. In that case, we held the plaintiff to be contributorily negligent as a matter of law, holding that, since the plaintiff knew that the street car was coming toward him, he had a duty to keep his eye upon it and avoid getting in its path, and that a failure to do so was negligence beyond any reasonable doubt.

In deciding that case, Judge Chadwick, speaking for the court, stated:

"While no absolute duty to stop, look, and listen rests upon one who is about to cross a street car track (*Roberts v. Spokane St. R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Richmond v. Tacoma R. & Power Co., supra*), we do not understand that this or any other court has ever held that one, knowing a street car to be approaching, can shut his eyes to the fact and step heedlessly in front of it under the mental assumption that the car will not overtake him. Accidents are not ordained or prescribed. They happen, and generally it is the unexpected that happens. What might happen is one of the cogent factors in determining questions of relative duty. . . .

"Whether a pedestrian should have known of the approach of a street car would no doubt be, in almost any conceivable case, a question for the jury; but when admitting that he knew it, there is a duty—not a duty owing to another, but a duty owing to self—to keep in mind the fact that a car is approaching; for as is most aptly said by the Wisconsin court in a street car case:

" 'He is not at liberty to calculate how long it will take an approaching train to reach the crossing if running at a lawful and usual rate of speed. He must anticipate that it may be running at an excessive speed and may reach the crossing before he can safely pass it.' *Grimm v. Milwaukee Elec. R. & Light Co.*, 138 Wis. 44, 119 N. W. 833."

Again, in *Knight v. Seattle*, 128 Wash. 246, 222 Pac. 471, we dealt with a situation in which the plaintiff had looked along the tracks before leaving the curb, saw the street car standing across the street, and then proceeded to cross without paying any further attention to the car in question. She looked again for the first time when the car was right upon her, and was unable to escape. We held the plaintiff was contributorily negligent as a matter of law for walking directly in front of an approaching car without looking for its approach, although in a situation where she had reason to expect its approach, and in a situation where there was nothing to distract her attention from it.

*McClelland v. Pacific Northwest Traction Co.*, 138 Wash. 527, 244 Pac. 710, is another case in which we found the plaintiff pedestrian contributorily negligent as a matter of law. In that case, the plaintiff was fully conscious of the approach of the car, and kept her eye upon it continually for a distance of about 250 feet of its approach. Her view was unobstructed at all times. We held that the plaintiff, being a pedestrian, had thorough control over her movements, and could have protected herself easily by simply stopping before entering upon the tracks in the face of the rapidly approaching car, and that a failure to do so constituted contributory negligence as a matter of law.

In *Hersey v. Seattle*, 141 Wash. 23, 250 Pac. 467, the plaintiff was engaged in assisting an aged woman across the street at the time of the accident, which took place upon a dark, misty night. The evidence was to the effect that, although the street car's lights were burning, they were very much dimmed, due to the atmospheric conditions. We held in that case that the question of contributory negligence was properly submitted to the jury, due to the facts peculiar to the case, as set forth above.

The case of *Johnson v. Seattle*, 141 Wash. 385, 250 Pac. 409, involved an accident in which the plaintiff, along with a number of other persons, crossed the tracks toward a loading platform, intending to catch the street car which injured him. Before entering upon the road in which the tracks lay, the plaintiff looked along the tracks and saw the car approaching. It was about half a block away, and was approaching slowly. The plaintiff thought the car was going to stop, and that he would have plenty of time to catch it. He did not look again until he stepped upon the track, at which time the car was already almost upon him. The car had been speeded up by the motorman after the plaintiff had looked at it, the motorman not intending to stop at that place. We held that the plaintiff was not contributorily negligent as a matter of law. The cited case may be distinguished from the case at bar in that the plaintiff in that case had no actual knowledge of how close the car was when he stepped onto the tracks, the plaintiff having failed to look along the tracks after his initial glance. In the case at bar, on the other hand, the Hyneks were looking at the car all the while, and were signaling it as it approached them.

The case of *Hoyer v. Spokane United Railways*, 153 Wash. 450, 279 Pac. 742, was very similar in its facts to the case at bar. There, as here, the plaintiff thought that the street car was going to stop at the corner he was approaching, and there, as here, he entered upon the street waving and signaling to the operator. However, the testimony of the plaintiff in that case was to the effect that the headlight of the approaching street car was shining brightly, and he was unable to gauge its distance from him at the time he entered the space between the tracks. In view of that fact, we

held that the question of contributory negligence was for the jury to decide.

In *Thomson v. Seattle,* 160 Wash. 225, 294 Pac. 979, we failed to find that the plaintiff was contributorily negligent as a matter of law where he saw the street car approaching some 250 feet away on the tracks, the plaintiff then being about fifteen feet away from the tracks. The night was quite foggy and misty, and the vision of the plaintiff was impaired for that reason. Thinking he had ample time to cross over the tracks, the plaintiff continued forward, but was struck by the street car, which was advancing at an excessive rate of speed. That case is distinguishable from the cases which found contributory negligence to be present as a matter of law, in that the atmospheric and climatic conditions were such that the plaintiff was unable to tell whether the car was approaching at an excess speed, and may have been said, by the jury, to have been justified in relying upon the defendant's operating the car at a prudent and lawful rate of speed, in which case he would have ample time to cross over the tracks.

In the case of *Lamoreaux v. Tacoma R. & P. Co.,* 176 Wash. 307, 28 P. (2d) 1019, we held that the plaintiff's allegations, in a complaint to which a demurrer had been sustained, did not show contributory negligence as a matter of law, the facts alleged being to the effect that the plaintiff had looked for and had seen the street car in question when it was a block away, and, thinking she had ample time to cross in front of it safely, proceeded to cross the street. She was carrying an umbrella at the time, and carried it in such manner as to cut off her view of the approaching car, and was struck by it as she crossed the tracks. In that case, this court decided that the plaintiff was entitled to rely upon the defendant's

exercising due care, and felt that it was a jury question as to whether she failed to exercise ordinary care in crossing the street with knowledge of the fact that the street car was approaching from a point a block distant. Under those circumstances, it would seem that the failure of the plaintiff to maintain a continuing lookout for the approaching car was not as negligent as was the case in other situations discussed above.

The case of *Hohman v. Seattle*, 179 Wash. 663, 38 P. (2d) 242, discloses that the plaintiff saw the defendant's street car when it was about three hundred and fifty feet away from the point at which she was struck. She was then about thirty feet away from the landing platform toward which she was going. She waved her shopping bag at the motorman and started across the tracks, and didn't see the car again until it was right upon her. We held that the plaintiff's contributory negligence was for the jury to find, and that the plaintiff had the right to assume that the motorman would heed her signal.

The case of *Jackman v. Seattle*, 187 Wash. 446, 60 P. (2d) 78, is one in which the question of the plaintiff's contributory negligence was found to be for the jury, but in that case the facts showed that the accident happened on a very foggy morning, when visibility was exceedingly poor. The plaintiff's testimony was to the effect that he had looked for approaching cars, but was unable to see a thing approaching, even though he was constantly looking as he neared the tracks. Under those facts, it was decided that reasonable men could differ as to whether or not the plaintiff had failed to exercise reasonable care for his own safety and welfare.

The case of *Poland v. Seattle*, 200 Wash. 208, 93 P. (2d) 379, was one in which the plaintiff's actions were found to have been contributorily negligent as a mat-

ter of law. In that case, the plaintiff contended that he had looked for approaching cars, but failed to see any. However, there was evidence to the effect that the plaintiff's vision was good, and that he had an unobstructed view of the tracks for some one hundred and eighty feet. The street car was illuminated fully at the time. We held that, since the object must have been seen had there been an exercise of ordinary care, the plaintiff was to be held to that same degree of care which would have been required if he had actually seen the object.

A search of the authorities in other jurisdictions has revealed several cases involving factual situations very much akin to that presented in the case at bar.

The case of *Stockton v. Philadelphia Rapid Transit Co.*, 260 Pa. 372, 103 Atl. 922, was one in which the plaintiff was struck while attempting to cross the car tracks of the defendant. He had seen the car of the defendant approaching, and held up his hand to indicate to the motorman his intention of crossing. When the car was several feet away from him, he stepped onto the track and was struck. In disposing of the case, it was decided by the court that, as a matter of law, the plaintiff had been contributorily negligent. No discussion of the matter was set forth.

In *Clark v. Pittsburgh Railways Co.*, 314 Pa. 404, 171 Atl. 886, the plaintiff saw the approaching street car from a time when it was four hundred feet down the track. He entered upon the street at that time. He testified that when it was about seventy feet away it was diminishing its speed, although it was running "pretty fast" at that time, just before he stepped onto the rails. He was held to have been contributorily negligent as a matter of law for not having maintained a constant lookout as he continued forward, and for

stepping into the path of the oncoming car, of whose approach he was aware. The court remarked:

"That a person who crosses a track in front of a 'pretty fast' moving street car 70 feet away without again looking at the car until it is four or five feet away from him is guilty of contributory negligence is too plain for argument. Inattention in an obviously hazardous situation is negligence. We said in *Hawk v. P. R. R. Co.*, 307 Pa. 214, 220, 160 A. 862: 'Common prudence requires alert watchfulness and celerity in getting out of a zone of danger as well as caution in getting into such a zone. It has been aptly said: "When human life is at stake, the rule of due care and diligence requires everything that gives reasonable promise of its preservation to be done, regardless of difficulties or expense": 20 Ruling Case Law, page 25, section 18.' "

In *Thompson v. Metropolitan St. R. Co.*, 89 App. Div. 10, 85 N. Y. Supp. 181, the decedent saw the oncoming car slow up when a short distance away. The speed was increased again, however, and as the decedent stepped upon the tracks he was struck by the car. In holding the intestate to have been contributorily negligent as a matter of law, the court stated:

"Whether or not a signal of the approach of the car was given is of no importance, because the evidence is conclusive upon the point that the intestate saw the car. He 'looked at the car,' and must have known that it was approaching, because it was then only 8 or 10 feet from him. Nor is there any force in the suggestion that he had a right to assume, because the car had commenced to slow up, that it would be so controlled that he could cross the street in safety. It was the duty of the motorman as the car approached the crossing to have it under reasonable control. *Hoyt v. Metropolitan St. Ry. Co.*, 73 App. Div. 249, 76 N. Y. Supp. 832. But this did not give the intestate the right to assume that it would come to a stop, or that its speed would be so controlled as to give him time to pass over the tracks

without being injured. He had no more right to indulge in this assumption, under the facts set out in the record, than the motorman had to indulge in the assumption that the intestate would keep out of the way of the car. The intestate, of course, was as much obligated to look out for his own safety as the defendant was to prevent his being injured. The obligation resting upon each was mutual in this respect. Both had an equal right to the use of the street at this point, and while it was the duty of the defendant to move its car with care, to the end that the intestate would not be injured, he was also required to exercise the same care to prevent being injured. We are of the opinion that the record failed to establish the negligence of the defendant, or the intestate's freedom from negligence."

In *Welsh v. Concord, M. & H. St. R. Co.,* 223 Mass. 184, 111 N. E. 693, the deceased saw the street car in question when it was about eight hundred and seventy-five feet away, and then began to cross the street toward a loading zone, intending to catch that street car. She waved her arms in the direction of the car as she crossed the street. When the car was only about ten feet away from her, the deceased entered upon the tracks, and was killed. We deem the language of the court worthy of quotation, due to its applicability to the facts in the case at bar:

"A person travelling upon the highway must exercise care to avoid known dangers. The gong was not sounded upon the car, nor was any signal given of its approach, but this is immaterial so far as the conduct of the deceased is concerned. She knew that the car was approaching and was endeavoring to take it at the white post. The facts as they appear from the undisputed evidence make it plain that, in her hurry and confusion to obtain passage upon the car, the plaintiff's intestate ran upon the track directly in the path of the car without regard to the manifest danger which confronted her. The car had been in plain sight from the time she left the Coyne house up to the time she was

struck. There was no reason why she should have left a place of safety upon the highway and started to run or walk across the track when the car was but a few feet away and approaching at a high rate of speed. There was, so far as the evidence discloses, nothing to distract her attention, and no evidence that her senses were defective. While the accident was most unfortunate, we cannot escape the conclusion that the deceased, in her hurry to reach the post and take the car, in utter disregard for her safety, precipitated herself upon the track in front of a rapidly moving car, a place of great and obvious peril."

Again, in *Smith v. Boston Elevated R.*, 23 N. E. (2d) (Mass.) 857, contributory negligence was found as a matter of law where the plaintiff saw the approaching street car for some distance, and stepped into its path when it was but a few feet away. The court gave no weight to the plaintiff's statement to the effect that she thought the street car was slowing down, and that she thought she had plenty of time to cross over the tracks. The court held that at the moment she left the zone of safety and entered upon the car tracks, the street car was so close to her that there was clearly a failure to exercise due care.

The case of *Devore v. Rapid R. Co.*, 235 Mich. 405, 209 N. W. 111, involved a factual situation which differed from that in the case at bar in that the plainiff was injured as a result of standing too close to the car tracks, instead of being injured as a result of attempting to cross in front of the street car. However, the following language from that case is very much in point:

"When the plaintiff placed himself close to the track and gave the customary signal and received no negative response, he had a right to assume that the car would stop, but he had no right to continue to indulge in that presumption after there was presented to him positive evidence that it was not going to stop. It continued towards him with increasing speed, and gave no indication that it was going to stop. When it was

within 10 feet of him running at a rapid rate of speed he must have known that it was intending to pass. It could not stop then in time to avoid hitting him. He had no right to be indulging in any presumptions at that time. He knew that it would strike him unless he withdrew from the track, which he could have done instantly. Hé could have done so when it was within 5 feet of him. So it must be held that he realized the impending danger and had ample time to withdraw to a place of safety. He did not do so. In view of these undisputed facts, the plaintiff was guilty of contributory negligence, and the circuit judge was right in so holding as a matter of law."

In *Griffith v. Denver Consol. Tramway Co.*, 14 Colo. App. 504, 61 Pac. 46, the decedent was found to have been contributorily negligent as a matter of law when it was shown that she saw an oncoming street car, wanted to board it, and proceeded to cross the street waving her handkerchief as a signal to the motorman to stop for her. The court held that for her to have entered upon the space between the tracks with full knowledge of the rapid approach of the street car was an act so negligent as to preclude any disagreement as to its character.

*Liutz v. Denver City Tramway Co.*, 43 Colo. 58, 95 Pac. 600, was a case in which the decedent had seen the street car approaching, had signaled it to stop, and then proceeded to cross the street. It was shown that at the moment the decedent stepped upon the car tracks it was only about five feet away from her, and was approaching rapidly. This being the case, the court found that the decedent had been contributorily negligent as a matter of law in so doing.

In *Hendricks v. Virginia Electric & Power Co.*, 161 Va. 793, 172 S. E. 160, the plaintiff was injured while crossing the car tracks to approach a spot at which he alleged he believed the street car would stop. That spot was not the regular stopping place, however, and

416

the court began by failing to find that the defendant was negligent. Having done so, the court pointed out that it would be incorrect to refer to the plaintiff's conduct as being contributorily negligent, but held that it was in itself the only negligent conduct involved in the accident, and was the sole proximate cause thereof. The court held that the plaintiff's knowledge of the approach of the street car, on which he alleged he had kept his vision fixed for some time, was such a reckless and rash act that it was clearly negligent, pointing out the fact that pedestrians can, in most cases, avoid such injuries by "the exercise of the slightest care," by stopping and not taking the fatal step into obvious danger.

To summarize, we find the *Burian, Chisholm, Richmond, Hersey, Johnson, Hoyer, Thomson, Lamoreaux, Hohman,* and *Jackson* cases hold that, under the facts present in those cases, the question of contributory negligence was for the jury, while in the *Skinner, Helliesen, Fluhart, Beeman, Knight, McClelland,* and *Poland* cases, this court decided that the injured party was guilty of contributory negligence as a matter of law.

We have already distinguished some of our cases upon the facts. However, the facts present in the last mentioned cases and in the *Johnson, Lamoreauz,* and *Hohman* cases are so similar in all material aspects that they cannot be easily harmonized or distinguished. We are therefore forced to adopt the reasoning of one set or the other.

▮ In the light of the definition of the term "contributory negligence," as contained in the quotations set out in the first portion of this opinion, our own decisions, and those of other jurisdictions, we hold that every person must use ordinary care and caution for his own safety, and that one who knowingly ap-

proaches a dangerous vehicle, such as a rapidly moving street car, and deliberately steps in its path at a time when there is nothing to detract his attention or reasonably lull him into a feeling of security, is guilty of contributory negligence as a matter of law.

After considering the definition of contributory negligence, and the force of the reasoning contained in the *Skinner, Helliesen, Fluhart, Beeman, Knight, McClelland,* and *Poland* cases, and in those from the other states which we have cited, we feel constrained to adhere to, and adopt, the holdings in the last mentioned cases. They reflect a better application of the general rule and conform more closely to the weight of authority.

Applying the rules to the facts present in the instant case, we find that Mr. Hynek was in possession of all of his faculties. He saw the lights of the approaching car when it was seven hundred feet from the place where he was standing. He then walked across the street with his eyes upon the approaching street car. He was at all times in a position to judge its speed, and there was no traffic of any kind to distract his attention. He saw that the street car, weighing several tons, was traveling at a rapid rate of speed toward him, that it traveled on a fixed course upon rails inbedded in the street. The rails and the moving car were in themselves notices of danger which any reasonable man was compelled to appreciate.

The thought is well expressed in the following quotation from *Lewis v. Seattle Taxicab Co.,* 72 Wash. 320, 130 Pac. 341:

"On the question of the degree of care required of persons while crossing public streets used by passing vehicles, the appellant cites from this and other courts a number of cases of injury caused by railroad trains and passing street cars; but it is at once apparent that

these cases can hardly be said to be in point except as they may state general principles. The degree of care required of a pedestrain crossing a railroad or street car track is much higher than is the care required of one crossing an ordinary public street where only passing teams or automobiles are to be encountered. Railroad trains and street cars must move on a fixed track, and the track is, for that reason, at once a warning of danger and a marking of the zone of safety; the cars are heavy and cumbersome and cannot turn aside to avoid a collision or be brought quickly to a stop when once in motion; hence the persons directing the movements of such cars are limited in their powers to protect persons found upon the track. But this is not true with reference to ordinary vehicles. The driver of these has freedom of choice as to the part of the street he will drive them upon; they can be turned quickly to one side or the other, and are capable of easy control otherwise. As to these, therefore, the footman may rely on the presumption that, so long as he occupies one place or pursues a given course, he need not be run into, and to fail to keep a lookout for the approach of such vehicles is not necessarily want of care. The degree of care required of such a person of course varies with the circumstances. It depends largely upon place and upon the condition of the street; whether the street is crowded with traffic or comparatively free therefrom; whether he enters the street at a place usually used by travelers on foot, and perhaps on many other conditions, but the degree of care required is ordinary care under the circumstances, and this as we say may be vastly different from ordinary care with reference to crossing fixed tracks upon which railway or street cars are operated."

Notwithstanding the prominent facts which we have pointed out, Mr. Hynek deliberately walked across the street and then stepped in front of the rapidly approaching car in the face of known danger and the warning given to him by his wife at a time when the car was fifty feet north of him.

It is true that he may have believed that the car's

regular stopping place was at the southern corner of the intersection, and that when he saw the car slowing down he thought it was an answer to his signal; however, the evidence of respondent was to the effect that it was plain that the speed of the car was again being accelerated when it was still some fifty feet away from the point where he was struck, and he was warned of that fact by his wife.

The minds of reasonable men will not differ in opinion that an individual is guilty of contributory negligence when so acting. Respondent's evidence conclusively shows that the acts of her husband constituted contributory negligence which became the predominate, proximate cause of his death. We are compelled to hold that such conduct on the part of one injured precludes recovery. To hold otherwise would be to relieve pedestrians of all duty and put a premium upon carelessness.

■ We are next faced with the question of whether respondent was entitled to recover because of the application of the last clear chance doctrine.

We are of the opinion that the court was in error in submitting the instruction relative to last clear chance to the jury, and that respondent cannot lean upon that rule in order to sustain her judgment.

The doctrine of last clear chance has two phases, dependent upon whether the defendant actually saw the plaintiff in time to have avoided the accident, or whether the defendant should have seen the plaintiff in time to avoid the accident, but really did not.

Under the first phase, involving actual knowledge of plaintiff's plight, the rule of this court has been that the doctrine is applicable even though the negligence of the plaintiff may have continued down to the moment of the impact.

Under the second phase, however, in which the de-

fendant should have seen the plaintiff in time to avoid the injury, but actually did not, we have consistently held that the doctrine has no effect unless it is shown that the negligence of the plaintiff terminated or culminated in a situation of peril from which he could not extricate himself. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; *O'Brien v. Washington Water Power Co.*, 79 Wash. 82, 139 Pac. 771; *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302; *Larson v. Tacoma R. & P. Co.*, 146 Wash. 660, 264 Pac. 419; *Zettler v. Seattle*, 153 Wash. 179, 279 Pac. 570.

In the case at bar, it is plain that the negligence of the decedent was not apparent until the moment of the impact. Mr. Hynek was not in a position of danger until the moment he stepped in front of the car, and the motorman, had he seen him, would not be required to anticipate that Hynek would so negligently conduct himself as to risk his life by stepping from his place of safety directly in front of the moving car.

There is no room for the application of the rule until the negligence of the injured person has commenced. *Stubbs v. Boone*, 164 Wash. 368, 2 P. (2d) 727.

In *Hartley v. Lasater*, 96 Wash. 407, 165 Pac. 106, we stated:

"Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation."

The application of that holding is clearly apparent.

The foregoing considerations make it unnecessary to pass upon the other points which have been raised.

The judgment of the trial court is reversed, with instructions to dismiss the action.

ROBINSON, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—As late as *Rieger v. Kirkland, ante* p. 326, 111 P. (2d) 241, this court, speaking through Steinert, J., answering the argument that appellants were not guilty of negligence and that respondent was guilty of contributory negligence as a matter of law, said:

"In passing upon those contentions, we must, of course, not only regard as true all competent evidence which is favorable to respondent, but must also give him the benefit of every favorable inference that can reasonably be drawn from such evidence."

That is merely a restatement of a long established and universally recognized rule that all competent evidence in the record which is favorable to the respondent must be regarded as true and that the respondent must be given the benefit of every favorable inference which may reasonably be drawn from such evidence; that, where the minds of reasonable men may differ, the question should be submitted to the jury; and that, if, when so considered, the court finds there is substantial evidence to sustain the verdict, the judgment must be affirmed.

I am constrained, despite previous futile efforts in support of a view which has not commended itself to this court, to again voice my objection to the majority's drastic departure from the foregoing cited and quoted rule, as such change in policy is destructive of the jury system, hence a change which we as Americans should be slow to sanction.

The constitution (Art. I, § 21, state constitution) guarantees that the "right of trial by jury shall remain inviolate," but the legislature may provide for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

The word "inviolate," as used in the above-quoted constitutional provision, means freedom from sub-

422

stantial impairment by courts, as well as by legislatures. The word "inviolate," as used in the above-quoted section, does not prohibit modification of the details of administration which does not affect enjoyment of the right of trial by jury, a right sometimes figuratively designated as "the jewel of Anglo-Saxon jurisprudence."

Under the above-quoted section of our constitution, the courts cannot legitimately trench on the province of the jury upon questions of fact. It is the function of the jury, not the court, to settle disputed issues of fact. Courts should be on the alert to safeguard, instead of rendering nugatory, the constitutional right of trial by jury.

There is justification for a dissenting opinion only if it is right, but it is of no avail if it fails to challenge attention, provoke inquiry, and eventually lead to ascertainment of the truth. Whether the writer is correct in his conclusions with respect to which the majority and the undersigned differ, will be answered now and in the future by a most charitable profession. It is hoped that what is said herein may so interest the profession that ultimately we may again adopt and follow the rule which the minority believes is violated by the opinion of the majority.

The majority concedes that appellant was guilty of negligence. In the absence of evidence of primary negligence, there would be no point in the discussion of the question of contributory negligence. Well may the majority admit the sufficiency of the evidence to establish the fact that appellant was guilty of negligence, as there is substantial evidence appellant was guilty of gross negligence.

Appellant's street car was operated at an excessive rate of speed, and the operator did not have the car under reasonable control. The deceased was struck

while on the crosswalk, after which impact the street car traveled a distance of two hundred and two feet. The motorman testified that he applied the brakes, threw the car into reverse, and did all that he could to stop the car, from which the jury was warranted in believing that the street car proceeded two hundred and two feet with the brakes set and while in reverse, which concludes the question whether the street car was operated at an excessive rate of speed and in wanton disregard of the rights of pedestrian and other traffic.

There is, also, competent evidence the motorman could have seen, had he looked, the deceased at a point thirty-five to seventy-five feet from the place of collision with the deceased, hence he may not say he did not see deceased in time to stop the car or warn the deceased in time for the latter to escape from the place of peril. It should be remembered that a street light made deceased plainly visible to any one who was looking for passengers. It was the duty of the operator of appellant's street car to watch for intending passengers and traffic.

The Hyneks saw the street car, when they were at the street corner at a pedestrian crossing, at which time the street car was seven hundred feet distant from them. The Hyneks were walking normally, crossing directly on the pedestrian crossing. They had the right to assume that the car was stopping in response to their signal. The jury was warranted in finding from the facts that the operator of appellant's street car saw the Hyneks, slowed down to stop in response to their signal, and then changed his mind and went forward without warning the Hyneks.

An apposite case is *Hoyer v. Spokane United Railways*, 153 Wash. 450, 279 Pac. 742. The course of Sprague avenue in the city of Spokane is east and west, and thereon are the double tracks of the street railway

of the defendant. Ivory street runs north and south, but does not extend north of Sprague avenue. About nine p. m., the plaintiff came on to Sprague avenue from the north, about thirty-four feet west of the west sidewalk line of Ivory street, with the intention of boarding an eastbound street car. He saw a street car approaching from the west two blocks away. Plaintiff walked east thirty-four feet to the west sidewalk line of Ivory street, turned south, and proceeded to cross the street to board the street car on the south side of the street. He testified that he did that at the time in the belief that he had ample time to cross over the south track before the street car would arrive at its stopping place, and he believed that the street car was slowing down and about to stop in response to his holding up his hand, as he was crossing Sprague avenue, as a signal for the car to stop. Other witnesses testified the car was running thirty to thirty-five miles an hour and that it did not slow down until just about, or immediately prior to, the impact. The car ran a distance of about three times its length before it could be stopped. The plaintiff was struck when he had crossed over the south rail. The trial court sustained a challenge at the close of the plaintiff's case on the ground of plaintiff's contributory negligence. We reversed the judgment of dismissal and remanded the cause with instructions to award the plaintiff a new trial. In the course of our opinion, we said:

"No contention is here made in behalf of respondent but that the operation of its street car, immediately preceding and at the time it struck appellant, was proved to be so negligently done that a jury might have found in favor of appellant on that question; more particularly as to the street car's excessive speed and the motorman's failure to observe appellant's crossing Sprague avenue and his signal for a stopping of the car at the usual stopping place at that intersection. . . .

"It seems to us that the facts of the case, as the jury might have believed them, are such that the question of appellant's contributory negligence could not be decided as a matter of law against him. This case, like many others we have been heretofore called upon to decide, belongs, it seems to us, to that class wherein it becomes a question of fact for the jury to decide as to whether or not, under the circumstances, appellant was justified in assuming that he could safely cross the track without the car striking him. This is particularly true in view of the fact that this was a regular stopping place of the street cars eastward bound, upon proper signal being given therefor, and in any event was a place where the right of way of appellant was superior to the right of way of the street car, though we do not fail to recognize that such right of way is not absolute, but relative, as we have said in substance. If the car had not been running at an excessive speed, plainly appellant would have gotten across without being struck; and, if the car had stopped in response to appellant's signal, plainly he would have gotten across without being struck. This is not a case of appellant proceeding, wholly unwarranted, without taking any precautions. We think it cannot be said but that the exercise of his judgment under the circumstances was a question for the jury, and not for the court to decide. . . .

"The decision of this court which, to our minds, comes nearest to being out of harmony with the conclusion we here reach, is that of *McClelland v. Pacific Northwest Tr. Co.*, 138 Wash. 527, 244 Pac. 710. It appears in that case, however, that the interurban car was not supposed to stop at the place in question, and the injured plaintiff testified, 'I did not think it was going to stop at Mercer street.' This was where she crossed in front of the interurban car, knowing it was coming, and was injured. We conclude that the trial court erred in deciding as a matter of law that appellant was guilty of contributory negligence."

The only distinction between the case cited and the case at bar in point of fact is that, in the former case, the plaintiff was crossing to the regular stopping place, probably due to the fact that he was familiar with that

particular intersection and the street car system, while in the case at bar the deceased was crossing the south crosswalk rather than the northerly crosswalk, which, under the evidence adduced by the appellant, was the regular stopping place. This is not a determinative factor when you take into consideration the unfamiliarity of the deceased with the street car system and, particularly, the intersection in question, and the evidence that the stopping places in the vicinity varied; that is, some stops are made at the near side of the intersection and some are made at the far side. There were no street car stop signs at the intersection in question. It must also be borne in mind that the deceased had the right to assume that the street car stopped at the southerly crosswalk where the Hyneks were crossing and, also, that they were misled, as was the plaintiff in the *Hoyer* case, by the action of the operator of the car. The *Hoyer* case has not been overruled. See, also, *Hohman v. Seattle,* 179 Wash. 663, 38 P. (2d) 242.

Throughout our consideration of the case at bar, we can not be too mindful of the fact that the question of contributory negligence of the deceased should not be considered solely with respect to the actions of the deceased, but must be considered, as counsel for respondent insist, in the light of the gross negligence of appellant. The fact can not be stressed too strongly that the deceased moved in front of the approaching car in reliance upon the action of the operator of that car in slowing down that vehicle in response to the signal of the deceased, and upon the assumption that the street car would stop. The following language from the opinion in *Hines v. Chicago, M. & St. P. R. Co.,* 105 Wash. 178, 177 Pac. 795, is apt:

"Counsel for respondent seek to have us shut our eyes to the question of its negligence, and proceed upon the theory that such negligence is not a subject for proper inquiry at this time, since they are relying upon

the contributory negligence of appellant to defeat his recovery. This view of the case, we cannot assent to. This is one of those cases where the question of appellant's contributory negligence is intimately related to the question of respondent's negligence, since it was the negligent acts of respondent which largely induced appellant to act as he did. When respondent's servants failed to give such signals by sound or lights as would attract the attention of one about to pass over this country crossing, indicating that the locomotive was running in that direction, it clearly was guilty of negligence; and such negligence becomes little short of a controlling factor in determining whether or not appellant was guilty of contributory negligence in acting as he did. As was well said by Judge Fullerton in *Hull v. Seattle, Renton & Southern R. Co.*, 60 Wash. 162, 110 Pac. 804:

" 'A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they appeared to one in his then situation—and if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence.'

"This is not only the rule applicable generally to contributory negligence, but it has peculiar force and application to conditions which are the creations of a defendant's relying upon the contributory negligence of the injured person to escape responsibility, when such conditions would naturally influence the action of the person charged with contributory negligence. This is the principle upon which our decision in *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, was largely rested, which dealt with a situation, we think, even less favorable to the injured person than that with which we are here dealing. We are also to remember that this is not a case where we are asked to decide negatively that there is not sufficient evidence of negligence on the part of respondent to warrant recovery; but we are asked to decide affirmatively that it has been conclusively proven that appellant was guilty of contributory negligence—a question as to which the burden of proof rested upon respondent. As pointed

out in the *Richmond* case, greater caution is to be exercised in deciding, as a matter of law, that a fact which the law requires to be affirmatively proven has been conclusively proven, than in merely deciding, as a matter of law, negatively, that a fact has not been proven. It seems to us that there is greater danger of invading the province of the jury in the former than in the latter case. That contributory negligence is an affirmative defense, casting the burden of proof upon the defendant to establish it, is the well settled law of this state. *Benson v. English Lumber Co.*, 71 Wash. 616, 622, 129 Pac. 403."

When Mrs. Hynek used the plural, "they" did certain things and saw certain things, in testifying as to what she and her husband did and saw, such testimony must be viewed in the light of the facts. She could not correctly testify what her husband saw. She could, it is true, testify what she saw him do, but there is no testimony that he told her what he saw. He was killed immediately, so no one could testify what he saw. Mrs. Hynek was eighteen inches behind her husband on his right hand side so it was impossible for her to know what her husband saw. Her inadvertent use of the word "we" instead of the word "I" can not be accepted as evidence of what Mr. Hynek saw, nor is the fact that Mrs. Hynek escaped injury determinative of the question whether deceased was guilty of contributory negligence. What she did or what she did not do, is not the standard of proper care. Only eighteen inches separated her from the same fate which befell her husband.

In *Poland v. Seattle*, 200 Wash. 208, 93 P (2d) 379, we again stated, but departed therefrom, the rule respecting the question of contributory negligence, which rule is applicable to the facts in the case at bar. We said:

"In approaching the question of respondent's contributory negligence, we have in mind that:

" 'The questions of negligence and contributory

negligence, where the evidence is conflicting, is always a question for the jury, has been held in so many cases that it is unnecessary to cite them.' *Crowe v. O'Rourke,* 146 Wash. 74, 262 Pac. 136.

" 'It has long been the rule of this court that, before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them.' *Walters v. Seattle,* 97 Wash. 657, 167 Pac. 124."

In *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, we said, respecting the rule which we have in the case at bar abandoned,

"The rule is that where, on a controverted question of fact, there is evidence, or there are justifiable inferences from evidence, upon which reasonable minds might reach different conclusions, the question becomes one of fact for the jury, and not for the court, to decide. *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410; *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931; *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993; *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349; *Shephard v. Smith,* 198 Wash. 395, 88 P. (2d) 601."

The challenge to the instruction on the doctrine of the last clear chance is without merit. If the instruction of which appellant complains is read in light of the facts, and if the following opinions of this court are of any weight, it will be at once clear that there was no error in submitting to the jury the "should have seen" phase of the last clear chance doctrine. *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302; *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Chase v. Seattle Taxicab & Transfer Co.,* 78 Wash. 537, 139 Pac. 499; *Kuhnhausen v. Woodbeck,* 2 Wn. (2d) 338, 97 P. (2d) 1099; *Morris v. Seattle, R. & S. R. Co.,* 66 Wash. 691, 120 Pac. 534; *Lung v. Washington Water Power*

*Co.,* 144 Wash. 676, 258 Pac. 832; *Locke v. Puget Sound Int. R. & P. Co.,* 100 Wash. 432, 171 Pac. 242; *Smith v. Gamp,* 178 Wash. 451, 35 P. (2d) 40. Even if the first phase of the doctrine, that "if he were seen by the motorman" were submitted, such instruction would not be erroneous. See *Chapin v. Stickel,* 173 Wash. 174, 22 P. (2d) 290.

In addition, an examination of the record will disclose that the exceptions to the instructions are not sufficient to raise the specific point urged on this appeal. Also, it will be found, if they are analyzed, that the authorities upon which appellant relies are distinguishable on the facts from the case at bar, or they are in conflict with prior and subsequent opinions of this court, therefore out of harmony with Art. I, § 21, state constitution, and contrary to the rule applicable to the facts in this case.

To cite, and quote extensively therefrom, the numerous opinions of this court in support of the position of the minority, would serve no useful purpose. The judgment should be affirmed.

MAIN, DRIVER, and BLAKE, JJ., concur with MILLARD, J.